UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EPICENTRE STRATEGIC CORPORATION -
MICHIGAN, a Michigan corporation,

          Plaintiff/counter-defendant,

                                 CASE NO.  04-CV-40278-FL
    v.                           JUDGE PAUL V. GADOLA
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

CLEVELAND CONSTRUCTION, INC., an
Ohio corporation,

          Defendant/counter-claimant,

and

CLEVELAND CONSTRUCTION INC., an
Ohio corporation,

          Third-party plaintiff,

    v.

RIVERSIDE MASONRY, L.L.C., d/b/a
C&R MASONRY OF MICHIGAN, a
Michigan corporation,

          Third-party defendant.

_____/

**REPORT AND RECOMMENDATION ON (1) PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AS TO ITS CLAIMS AGAINST DEFENDANT CCI
(docket #48); (2) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT CCI'S COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSES
(docket # 47); and (3) DEFENDANT CCI'S CROSS-MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIMS (docket #50)**

**I.**      **RECOMMENDATION:** The Court should deny the parties' cross motions for summary

judgment on Epicentre's claims (docket #48 and #50).  The Court should grant in part and deny in

part Epicentre's motion for summary judgment on CCI's counterclaim and motion to strike affirmative defenses (docket #47). Specifically, the Court should grant summary judgment to Epicentre on CCI's affirmative defenses 5-8 and 14, and should deny Epicentre's motion with respect to the recoupment counterclaim and the remaining affirmative defenses.

## II.    **REPORT:**

A.    *Background and Procedural History*

On or about January 10, 2001, Cleveland Construction, Inc. (CCI) "entered into a Construction Contract Agreement with Wal-Mart Stores, Inc. . . . pursuant to the terms of which CCI agreed to provide labor and materials necessary for the construction of a Wal-Mart Store and Sam's Club in Canton, Michigan[.]" CCI's 3d Party Compl., ¶ 8. Effective January 25, 2001, subcontractor Aurelio Cence (CEO of Riverside Masonry, doing business as C & R Masonry) and contractor Keith E. Ziegler (Vice President Construction of CCI) entered into a $2,045,000.00 subcontract agreement concerning the Canton Wal-Mart/Sam's Club project. *See id.* at ¶ 9; Pl.'s Br., docket #48, Ex. B

On or about November 27, 2001, Cence signed a continuing security agreement by which Bank One was granted a continuing security interest in Riverside's accounts receivable, inventory, equipment and instruments. *See* Pl.'s Br., docket #48, Ex. C, at 1, 5. With regard to accounts receivable, the agreement stated in part:

> It is agreed that, at any time the Bank elects, it shall be entitled, in its own name or in the name of the Debtor [Riverside Masonry, L.L.C.] or otherwise, but at the expense and cost of the Debtor [Riverside Masonry, L.L.C.], to collect, demand, receive, sue for or compromise any and all Accounts Receivable, and to give good and sufficient releases, to endorse any checks, drafts or other orders for the payment of money payable to the Debtor [Riverside Masonry, L.L.C.] in payment and, in its discretion, to file any claims or take any action or proceeding which the Bank may deem necessary or advisable.

*Id.* at 3.

When Riverside defaulted on its obligations, Banc One invoked its remedies under Article 9 of the Uniform Commercial Code. Litigation ensued in the Wayne County Circuit Court involving Banc One, Riverside, and Epicentre. *Banc One, NA, et al. v. Riverside Masonry, L.L.C., et al.*, Wayne County Circuit Case No. 02-241534-PD. The parties eventually reached a settlement agreement, resulting in Banc One assigning to Epicentre its interests in Riverside's accounts receivable.[1] On March 9, 2004, the CEO of Epicentre, as well as an officer of Banc One Leasing Corporation and a First Vice President of Bank One, NA, signed an assignment of debt and security interest. *See* Pl.'s Br., docket #48, Ex. 1. By this document, Bank One assigned to Epicentre "the full amount owed to Bank One, NA under [certain] loan documents between Riverside and Bank One, NA[.]" *Id*. at 1.[2]

In August 2004, plaintiff Epicentre Strategic Corporation - Michigan (Epicentre) filed this action against CCI in Wayne County Circuit Court. In this case, Epicentre seeks to collect on a debt allegedly owing to Riverside, standing in Riverside's stead by virtue of Banc One's perfected security interest in Riverside's accounts and the subsequent assignment of that interest to Epicentre. According to the complaint, "Epicentre has acquired the interests of Bank One and Banc One Leasing in all accounts, intangibles, property claims and amounts due and owing to [Riverside] and is asserting its claims against [CCI]." Compl. ¶ 4. Epicentre alleges that CCI "requested Riverside to provide various construction services with respect to the Sams/Canton construction project. And in turn, [CCI] promised to pay all sums due and owing to Riverside and its successor in interest,

---

[1]Banc One and Banc One Leasing are now owned by JPMorgan Chase Bank, N.A. For simplicity, this report and recommendation refers to these non-parties collectively as Banc One.

[2]The settlement agreement between Epicentre, Bank One and Riverside is confidential, but the assignment is not confidential.

Epicentre, as a result of those services provided." Compl. ¶¶ 8, 13.  The claims against defendant CCI include (i) breach of contract and (ii) open account.  *See* Compl. ¶¶ 7-11, 12-17. Epicentre seeks damages in the amount of $277,781.66.  *See* Compl. at 12.

CCI removed the case to this Court on September 24, 2004 pursuant to 28 U.S.C. §§ 1332 and 1441 based on the diverse citizenship of the parties.  On the same date, CCI filed an answer to the complaint.  Among CCI's affirmative defenses is the following claim: "There are no monies due or owing under the terms of the Subcontract Agreement as C & R Masonry first materially breached the Subcontract Agreement with CCI thereby excusing CCI from all further performance or payment."  *See* Answer to Compl., ¶ 18.  Furthermore, CCI filed a counterclaim for recoupment of $329,324.86 from Epicentre.[3]  CCI claims that Epicentre "is liable to CCI under Michigan's codification of article Nine of the Uniform Commercial Code, [Mich. Comp. Laws §§ 440.9101-440.9994]."  Doc. Ent. 3 ¶ 27.  Also, CCI filed a third-party complaint against Riverside Masonry, L.L.C. (Riverside) for (i) breach of contract; (ii) breach of warranties; and (iii) indemnification.

B.    *The Pending Motions for Summary Judgment*

Currently pending before the Court are three motions for summary judgment filed by the parties.[4]  On March 17, 2006, Epicentre filed two motions for summary judgment.  In the first motion (docket #47), Epicentre seeks summary judgment on CCI's recoupment counterclaim and the striking of several of CCI's affirmative defenses.  With respect to the counterclaim, Epicentre contends that CCI cannot pursue a recoupment claim for a number of reasons.  In the second motion

---

[3]In an August 19, 2005 declaration in support of default judgment, Mark Small, CCI Senior Vice President, attests that "$329,258.36 [is] now due and owing from Riverside to CCI under said Subcontract[.]" Pl.'s Br. in Resp. to CCI's Mot. for Summ. J., Ex. 2, Decl. of Mark Small, ¶¶ 3-4.

[4]Also pending is CCI's motion for default judgment with respect to its third-party claims against Riverside.  This motion is addressed in a separate Report filed on this date.

4

for summary judgment (docket #48), Epicentre seeks summary judgment in its favor on its claims. CCI filed a responses to the motions on April 7, 2006. Additionally, in conjunction with its response to Epicentre's motion for summary judgment on CCI's counterclaim, CCI filed a cross-motion for summary judgment on plaintiff's claims for relief. Epicentre filed reply briefs with respect to its motions for summary judgment on April 21, 2006, and a response to CCI's cross-motion for summary judgment on May 5, 2006. CCI filed a reply brief on May 31, 2006.

C.     *Legal Standard and Governing Law*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought. In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

5

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*,

477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden

of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials

to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981

F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property in*

*Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution*

*Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992).[5]  In other words, in such a case the movant

"must satisfy both the initial burden of production on the summary judgment motion–by showing

that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the

claim–by showing that it would be entitled to a directed verdict at trial."  William W. Schwarzer,

et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991).

---

[5]*See also International Ass'n of Heat and Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Environmental Services, Inc.*, 814 F.Supp. 392, 401 (D. Del. 1993) ("When the moving party seeks summary judgment based on a claim or defense upon which the moving party bears the ultimate burden of proof at trial, the moving party must establish every element of that claim or defense as a matter of law such that no reasonable jury could return a verdict for the nonmovant.").

"Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

Although the parties do not address the matter of the appropriate governing law in their briefs, both parties rely on Michigan law in support of their arguments. This reliance is proper, as Michigan law governs the claims in this diversity action. In resolving the parties' state law claims, the Court must apply the substantive law of the state. 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decisions in civil actions in the courts of the United States, in cases where they apply."); *see also, Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining the appropriate source of law, the Court applies the choice of law rules of Michigan, the state in which this Court sits. *Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those

7

prevailing in Delaware's state courts."); *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state."); *Security Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) (same).

Under Michigan choice of law rules, a court "will apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997). Here, the parties entered into a contract in Michigan for work to be performed in Michigan, and no other state has an interest in having its law applied to the contract at issue. Thus, under Michigan choice of law rules, Michigan law governs this action. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188(3); *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999) (noting that Michigan choice of law rules follow §§ 187 and 188 of the *Restatement*).

D.    *The Recoupment Counterclaim and Burdens of Proof*

As will become clear in the following discussion, the parties raise a number of arguments with respect to their respective positions. Nevertheless, and although not presented in this manner to the Court by the parties' briefs, the principal dispute between the parties revolves around Riverside's performance of its obligations under the contract. This dispute can be distilled to three principal questions: (1) is Riverside's performance or nonperformance under the contract with CCI

8

relevant to Epicenter's right to recovery from CCI; (2) if so, who bears the burden of proof with respect to this issue; and (3) in light of the burden of proof, is there a genuine issue of material fact with respect to Riverside's performance or nonperformance which would preclude either summary judgment in Epicentre's favor on its claims, or summary judgment in CCI's favor on its recoupment counterclaim. The answers to these three questions will resolve most of the issues raised in the parties' motions for summary judgment. The first two are addressed in this section; the third is addressed in the following section.

1.   *The Relevance of Riverside's Performance*

In its motion for summary judgment on CCI's recoupment counterclaim, Epicentre contends that Riverside's performance on the contract between Riverside and CCI is irrelevant to Epicentre's breach of contract claim for three reasons. First, Epicentre argues, it had no contractual relationship with CCI. Thus, it owes no contractual duty to CCI and is not subject to recoupment, which is a defense against an entity with whom one has a contract. Second, according to Epicentre, any rights which CCI may have to recoupment are subordinate to Epicentre's perfected security interest in the Riverside account receivable. Third, Epicentre contends that by filing a third party complaint against Riverside alleging breach of the contract, CCI has elected its remedies and may not pursue inconsistent recovery from Epicentre. The Court should reject each of these arguments.

*a. Lack of Contractual Relationship*

Michigan follows the common law rule of recoupment, as described in 20 Am. Jur. 2d *Counterclaim* § 5. *See Mudge v. Macomb County*, 458 Mich. 87, 108 n.20, 580 N.W.2d 845, 855 n.20 (1998) (adopting "the general recoupment rule from Am.Jur.2d typically applied in contract cases."). Under this common law rule, "[t]he defense of recoupment refers to a defendant's right,

9

in the same action, 'to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract.'" *Mudge*, 458 Mich. at 106, 580 N.W.2d at 855 (quoting 20 AM. JUR. 2D *Counterclaim* § 5); *see also*, *Minority Earth Movers, Inc. v. Walter Toebe Constr. Co.*, 251 Mich. App. 87, 96-97, 649 N.W.2d 397, 402 (2002); 80 C.J.S. *Set-Off and Counterclaim* § 2 ("Recoupment is of common-law origin and is the abatement or reduction of the plaintiff's claim by means of a legal or equitable right resulting from a counterclaim arising out of the same transaction.").[6]   There is some confusion as to whether recoupment constitutes an affirmative defense or a counterclaim. *Compare, e.g.*, *Mudge*, 458 Mich. at 106, 580 N.W.2d at 855 (emphasis added) (speaking of the "*defense* of recoupment"), *with Minority Earth Movers*, 251 Mich. App. at 96 n.5, 649 N.W.2d at 402 n.5 (finding that recoupment was properly raised even though not pleaded as an affirmative defense, because it was raised as a counterclaim by the defendant).   Perhaps the best way to view a recoupment claim is as an affirmative demand–hence a counterclaim–which functions in the nature of a defense:

> [R]ecoupment is a defensive action that operates to diminish a plaintiff's recovery rather than to assert affirmative relief, at least when applied in a court of law.  It goes to the foundation, justice, or existence of plaintiff's claim, and only to the abatement, reduction, or mitigation of the damages claimed by plaintiff.  Recoupment is thus in the nature of a defense, as it denies the validity of plaintiff's claim in the amount claimed, and does not entitle a defendant to any affirmative relief or any amounts in

---

[6]There is some smudging of the language with respect to recoupment in the case law, as some courts speak of recoupment and set-off as interchangeable terms.  However, the two are distinct concepts.  "A 'set-off' is a legal term of art which refers to a counterclaim demand, arising out of a transaction extrinsic to plaintiff's cause of action.  A recoupment, on the other hand, is a claim arising out of the same transaction between the parties." *Southern Broadcasting Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1331 n.9 (M.D. Fla. 2001), *aff'd*, 49 Fed. Appx. 288 (11th Cir. 2002); *see also*, *City of Grand Rapids, Mich. v. McCurdy*, 136 F.2d 615, 619 (6th Cir. 1943); *Ward v. Alpine Township*, 204 Mich. 619, 630, 171 N.W. 446, 450 (1919).

> excess of the amount demanded by plaintiff.
>
> While technically no affirmative relief may be had on recoupment, it is an affirmative cause of action that is distinct from a defense that merely attempts to defeat the plaintiff's cause of action by denial or avoidance.

80 C.J.S. *Set-Off and Counterclaim* § 2.

Epicentre argues that it is not subject to CCI's claim of recoupment because it has no contractual relationship with CCI, and thus cannot be liable for any breach. While this is true as a general matter, it is irrelevant here because Epicentre is attempting to enforce contractual rights of Riverside which Epicentre acquired by assignment. As such Epicentre "stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v. Bailey*, 260 Mich. App. 630, 653, 680 N.W.2d 453, 462 (2004); RESTATEMENT (SECOND) OF CONTRACTS § 336(2) and cmt. c. In other words, "[a]s assignee, [Epicentre] is entitled to recover only and just as [Riverside, its] assignor, might had no assignment been made." *Ward v. Alpine Township*, 204 Mich. 619, 631, 171 N.W. 446, 450 (1919). Thus, although there is no contract between Epicentre and CCI, as an assignee suing on the contract between Riverside and CCI, Epicentre stands in Riverside's shoes, and is subject to any defenses arising from the contract that CCI has against Riverside.

### b. Subordination to Security Interest

Epicentre also argues that CCI's recoupment claim is subordinate to its perfected security interest in Riverside's account receivable. In support of this argument, Epicentre relies on § 9-201 of the Uniform Commercial Code (UCC), which provides that "[e]xcept as otherwise provided in this act, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." MICH. COMP. LAWS § 440.9201(1). As Epicentre correctly points out, "[t]he effect of this provision is give priority to the Article 9 secured

11

party over 'anyone, anywhere, anyhow' except as provided in the Code." *Southeastern Fin. Corp. v. National Bank of Detroit*, 145 Mich. App. 717, 720, 377 N.W.2d 900, 901 (1985). Epicentre's argument flounders, however, because the UCC does provide an exception when dealing with assignees and account debtors. Specifically, § 9-404 (formerly § 9-318) provides:

> Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (2) through (5), the rights of an assignee are subject to all of the following:
> (a) All terms of the agreement between the account debtor and assignor *and any defense or claim in recoupment arising from the transaction that gave rise to the contract*.
> (b) Any other defense or claim of the account debtor against the assignor that accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

MICH. COMP. LAWS § 440.9404(1) (emphasis added).[7]  Contrary to Epicentre's argument, with respect to the transaction at issue in this case, CCI is not an unsecured creditor attempting to take priority over Epicentre's perfected security interest, but is an account debtor which retains its rights to claim recoupment against Epicentre's attempt to recover on the account debt. Section 9-404 embodies the common law rule that Epicentre, as the assignee, acquired no greater rights than its assignor.

The cases applying § 9-404 (and the predecessor § 9-318) make this point clear.  Under § 9-404, "a party who obtains rights in an account by an assignment is an 'assignee' . . . although such rights were obtained as a security for the assignor's performance of certain obligations."  *In re Thompson Boat Co.*, 230 B.R. 815, 825 (Bankr. E.D. Mich. 1995); *see also*, *First Nat. Bank of Boston v. Thomson Consumer Electronics, Inc.*, 84 F.3d 397, 400 (11th Cir. 1996); *Bank of*

---

[7]Paragraphs (a) and (b) correspond roughly to the common law concepts of recoupment and set-off, respectively.  *See In re Thompson Boat Co.*, 230 B.R. 815, 824 (Bankr. E.D. Mich. 1995).

*Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1190 (7th Cir. 1990) ("For purposes of [§ 9-404], the courts and the UCC have made no distinction between a party with a security interest in a debtor's accounts receivable and a party who is an assignee of a debtor's accounts receivable."); *In re Otha C. Jean & Assocs., Inc.*, 152 B.R. 219, 222-23 (Bankr. E.D. Tenn. 1993) ("[A] secured party with a security interest in accounts or general intangibles is the assignee under § [9-404]."). Because CCI's recoupment claim arises out of the transaction giving rise to the contract, Epicentre's rights are subject to CCI's rights of recoupment under § 9-404, notwithstanding the general prior right created by § 9-201. *See First Nat. Bank*, 84 F.3d at 401; *In re U.S. Aeroteam, Inc.*, 327 B.R. 852, 869-71 & n.15 (Bankr. S.D. Ohio 2005); *Thompson Boat*, 230 B.R. at 825-27.[8]

The cases upon which Epicentre relies do not compel a contrary conclusion. In *Southeastern Fin. Corp., supra*, the Court held that then § 9-104(9) (providing that Article 9 does not apply to any right of set-off), MICH. COMP. LAWS § 440.9104(i), did not give a bank rights superior to a perfected security interest but merely provided banks relief from the Article 9 filing requirements. Characterizing "the Bank as a general unsecured creditor," *Southeastern Fin. Corp.*, 145 Mich. App. at 721 n.2, 377 N.W.2d at 901 n.2, the court held that nothing in the Code resolved the priority dispute between the bank and the secured creditor, and thus that "§ 9[-]201 is controlling. As a

---

[8]Epicentre's attempt to distinguish *Thompson Boat* is unavailing. First, Epicentre argues that *Thompson Boat* is distinguishable because it primarily dealt with a trustee's rights in bankruptcy under the Bankruptcy Code. This is true. However, in deciding those questions, the court was required to apply § 9-404, and it is the court's discussion of that issue which is pertinent here. Second, Epicentre notes that the underlying contract in that case explicitly provided for a right of set-off, a provision which is missing from the contract between CCI and Riverside here. This factual distinction, however, is irrelevant to the legal issue, because § 9-404 is not limited to contractual rights of set-off or recoupment. Rather, the provision makes the assignee's rights subject to "*any* defense or claim in recoupment," MICH. COMP. LAWS § 440.9404(1)(a) (emphasis added), which would include not only contractual, but also legal or equitable, recoupment rights.

general unsecured creditor, [the bank's] claim of setoff should be subordinated to the perfected

security interest asserted by plaintiff." *Id*. at 721, 377 N.W.2d at 901 (footnote omitted). This

conclusion is inapplicable here. Unlike the bank in *Southeastern Fin. Corp.*, here CCI is not a

general unsecured creditor, but an account debtor. And Epicentre is not only a secured creditor, but

is an assignee with respect to the CCI account. Thus, § 9-404 is applicable here, whereas it was not

applicable in *Southeastern Fin. Corp.* and was not discussed at all by the court. Further, the security

interest at issue in *Southeastern Fin. Corp.* was a deposit account, which under the UCC is deemed

"cash proceeds." MICH. COMP. LAWS § 440.9306(1). And cash proceeds are not "accounts" within

the meaning of § 9-404. In short, § 9-404 (or more precisely its predecessor, § 9-318), was not

implicated in *Southeastern Fin. Corp.* because the bank was not an assignee asserting a claim of

recoupment with respect to an "account," but was a general unsecured creditor claiming a right of

set off. Thus, *Southeastern Fin. Corp.* does not control here. *See Thompson Boats*, 230 B.R. at 825-

27.[9]

The other case cited by Epicentre, *Consolidated Nutrition, L.C. v. IBP, Inc.*, 669 N.W.2d 126

(S.D. 2003), simply follows the approach to the set-off exclusion in § 9-104 adopted by the

Michigan Court of Appeals in *Southeastern Fin. Corp.*, and the language of that decision supports,

rather than detracts from, the conclusion that § 9-404 is controlling here. In *Consolidated Nutrition*,

the court noted that most jurisdictions "have adopted the narrow view of the § 9-104[] setoff

exclusion . Under that narrow view, § 9-104[] allowed a party to acquire a setoff right without

---

[9]For the same reason the other Michigan Court of Appeals case upon which Epicentre relies, *Tychoski v. Glynn*, No. 168017, 1996 WL 33357136 (Mich. Ct. App. Sept. 24, 1996), is inapplicable. *Tychoski* merely applied *Southeastern Fin. Corp.* in a context not involving assigned accounts. *See id*. at *2.

abiding by the Article 9 requirements for *creating and perfecting* a security interest.  The exclusion did not, however, take the setoff right out of the *priority scheme* of Article 9 when analyzing competing interests in the same collateral." *Id*. at 132.  Although adopting this narrow approach, the court immediately thereafter explained that its conclusion with respect to § 9-104 was reinforced by the different treatment of assignees and account debtors in § 9-404.  *See id*. at 133.  And, because the relationship between the parties in that case was that of assignee/account debtor, the court applied the rule of § 9-404 rather than the general priority rule of § 9-201.  Indeed, the court explicitly rejected the argument offered by Epicentre here, concluding that the account debtor's rights of setoff were superior to the assignee's security interest under § 9-404.  *See id*. at 133-34.

In short, "[t]he fact that [Epicentre] had a perfected security interest . . . makes no difference because [Epicentre's] secured status comes into play only after it is shown that [Riverside] was entitled to payment of the funds." *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 783 (10th Cir. 2001).  Thus, under § 9-404, Epicentre's security interest in the account creates no bar to CCI's recoupment claim.

### c.  Election of Remedies

Epicentre also argues that CCI's recoupment claim is barred by CCI's third-party claim against Riverside, which seeks to recover for the same alleged contract breaches which underlie CCI's recoupment claim.  By filing its third-party claim against Riverside, Epicentre contends, CCI has elected its remedies and may not pursue inconsistent relief through its recoupment counterclaim. The Court should disagree.

At the outset, Michigan election of remedies law is inapplicable at this stage of the litigation. Election of remedies has both a procedural aspect, prohibiting the pleading of inconsistent remedies,

and a substantive aspect, which prohibits double recovery.  The procedural aspect is, of course, a rule of procedure, and is thus governed by federal, rather than state, law.  *See Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990).  And the procedural aspect of election of remedies has been abolished by the Federal Rules of Civil Procedure.  *See id.*; FED. R. CIV. P. 8(e).  Thus, while the substantive election of remedies component prevents CCI from obtaining double relief from Riverside and Epicentre, the abolition of the procedural election of remedies component makes it proper for CCI to pursue both claims for relief.

In any event, Michigan law relating to election of remedies does not bar CCI's simultaneous pursuit of its recoupment counterclaim against Epicentre and breach of contract claim against Riverside.  As the Michigan Supreme Court has explained, the doctrine of election of remedies is "a procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both."  *Riverview Cooperative, Inc. v. First Nat. Bank & Trust Co.*, 417 Mich. 307, 311, 377 N.W.2d 225, 226 (1983).  However, "[i]ts purpose is not to prevent recourse to alternative remedies, but to prevent double redress for a single injury."  *Id.* at 312, 377 N.W.2d at 226-27.  "In order for the doctrine to apply, three prerequisites must exist: (1) at the time of the election, there must have been two or more remedies available; (2) the alternative remedies must be inconsistent rather than consistent and cumulative; and (3) the party must have chosen and pursued one remedy to the exclusion of the other(s)."  *Production Finishing Corp. v. Shields*, 158 Mich. App. at 494, 405 N.W.2d 171, 177 (1987); *see also*, *Riverview Cooperative*, 417 Mich. at 313, 337 N.W.2d at 227.

Here, "[t]he election of remedies doctrine does not apply . . . because the remedies sought by [CCI] are concurrent and cumulative rather than inconsistent."  *Production Finishing*, 158 Mich. App. at 495, 405 N.W.2d at 178.  As the Michigan courts have explained,

16

> For one proceeding to be a bar to another for inconsistency, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other. In this sense, inconsistency may arise either because one remedy must allege as fact what the other denies, or because the theory of one must necessarily be repugnant to the other. More particularly, where the election of a remedy assumes the existence of a particular status or relation of the party to the subject matter of litigation, another remedy is inconsistent if, in order to seek it, the party must assume a different and inconsistent status or relation to the subject matter.

*Id.* at 494-95, 405 N.W.2d at 177-78 (internal quotation omitted); *see also*, *Riverview Cooperative*, 417 Mich. at 322, 337 N.W.2d at 231 ("The remedies sought do not proceed from opposite and irreconcilable claims of right and are not inconsistent in the sense that a party may not logically pursue one remedy without renouncing the other."). Here, CCI's breach of contract claim does not logically negate its recoupment counterclaim against Epicentre. Both claims proceed on the same set of facts–Riverside's allegedly inadequate performance of the contract–and the theories of recovery are not repugnant to each other. To be sure, CCI has "suffered but a single injury," and therefore "may have but one satisfaction for that injury and may not have double redress." *Riverview Cooperative*, 417 Mich. at 322, 337 N.W.2d at 231. But nothing in Michigan election of remedies law bars CCI from pursuing this relief through the concurrent yet consistent claims it has brought against Riverside and Epicentre.

>        2.        *The Burden of Proof*

Having concluded that CCI may properly bring its recoupment claim against Epicentre, the next question to be answered regards the proper allocation of the burden of proof, to wit: Must Epicentre prove Riverside's performance of the contract as an element of its breach of contract claim, or rather must CCI prove Riverside's nonperformance as an element of its recoupment counterclaim? This issue is critical to the summary judgment issues presented by the parties

because, as discussed above, a moving party's burden on summary judgment differs depending on whether or not it bears the burden of proof on the issue for which summary judgment is sought.

There is some authority for the proposition that a plaintiff must prove its own performance as an element of a breach of contract claim. *See GLH Trucking, Inc. v. R&R Heavy Haulers, Inc.*, No. 250601, 2005 WL 77102, at *4 (Mich. Ct. App. Jan. 13, 2005) ("In an action for breach of contract, a plaintiff must show an express agreement, performance of the agreement by the plaintiff, and a breach of the contract by the defendant that resulted in damages to the plaintiff."). Other authority addressing the elements of a breach of contract claim, however, simply provide that "[t]o establish a claim for breach of contract, plaintiff must establish both the elements of a contract and the breach of it." *Rausch v. Yeo*, No. 269737, 2007 WL 162569, at *2 (Mich. Ct. App. Jan. 23, 2007) (citing *Pawlak v. Redox Corp*, 182 Mich. App. 758, 765, 453 N.W.2d 304, 307 (1990)).

More specific authority, however, establishes that it is CCI's burden to establish Riverside's nonperformance, rather than Epicentre's burden to establish Riverside's performance. First, as a general matter, in a case involving a suit between a contractor and subcontractor, the Michigan Court of Appeals has explained that "the party claiming breach of the agreement as a defense has the burden of demonstrating that the subcontractor did not perform in accordance with the contract." *Ben T. Young Co. v. Lafayette East Co.*, 56 Mich. App. 54, 56, 223 N.W.2d 361, 363 (1974). More specifically, the Michigan Supreme Court has held that "[o]n its plea for set-off and recoupment [defendant] plainly ha[s] the burden of proving that [plaintiff] ha[s] breached the contract." *Oakland Metal Stamping Co. v. Forest Indus., Inc.*, 352 Mich. 119, 125, 89 N.W.2d 503, 506 (1958); *see also*, *Livingston Shirt Corp. v. Great Lakes Garment Mfg. Co.*, 351 Mich. 123, 130, 88 N.W.2d 614, 618 (1958). Synthesizing these cases, another federal court has explained that, under Michigan law,

18

"[a]s a general rule, a party asserting that another is in breach has the burden of proving the breach." *Heidtman Steel Prods. v. Compuware Corp.*, 178 F. Supp. 2d 862, 866 (N.D. Ohio 2001) (applying Michigan law and citing *Oakland Metal Stamping* and *Livingston Shirt*).

Here, with respect to Riverside's performance under the contract, it is CCI which alleges that Riverside breached the contract. It is thus CCI which bears the burden of proving the breach on its plea for recoupment. Epicentre's burden is limited to proving the breach that it claims–that is, the alleged breach by CCI.

D.    *Whether Genuine Issues of Material Fact Remain*

With these general legal principles and burdens of proof established, the Court can now consider whether genuine issues of material fact remain with respect to each of the motions for summary judgment. After doing so, the Court should conclude that neither party is entitled to summary judgment on any of the bases raised in their respective motions.

1.    *Epicentre's Motion for Summary Judgment on Its Claims (docket #48)*

Epicentre moves for summary judgment on its claims, arguing that CCI cannot produce any evidence justifying CCI's reduction of the amounts owed to Riverside based on Riverside's alleged inadequate performance of the contract. Epicentre's argument focuses in large part on the adequacy of CCI's discovery responses. Specifically, Epicentre contends that CCI failed to provide the documents upon which it relies, and failed to produce a knowledgeable Rule 30(b)(6) representative. These failures, Epicentre contends, preclude CCI from introducing any evidence in support of its change orders and recoupment defense, and thus preclude CCI from establishing a genuine issue of material fact. The Court should disagree.

Rule 37(c) provides an automatic sanction against parties which fail to make disclosures or

cooperate in discovery.  Specifically, the rule provides that

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1).  "The exclusion of evidence under Rule 37(c)(1) for failure to make a disclosure required by Rule 26(a) is 'self-executing' and 'automatic.'"  *Caraustar Industries, Inc. v. North Georgia Converting, Inc.*, No. 3:04CV187-H, 2006 WL 3751453, at *8 (W.D.N.C. Dec. 19, 2006) (citing 1993 Amendments to Advisory Committee Notes to Fed.R.Civ.P. 37(c)); *see also*, *Mejia v. Marauder Corp.*, No. C06-00520 HRL, 2006 WL 3050853, at *1 (N.D. Cal. Oct. 24, 2006); *Elion v. Jackson*, No. 05-0992 (PLF), 2006 WL 2583694, *1 (D.D.C. Sept. 8, 2006).  Thus, "'[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.'"  *Dickenson v. Cardiac and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (citing *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004)); *see also*, *Sexton v. Uniroyal Chemical Co., Inc.*, 62 Fed. Appx. 615, 616 (6th Cir. 2003) ("This circuit has established that Rule 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26(a) unless the violations were harmless or were substantially justified.").  "The burden of proving the applicability of one of the exceptions is on the offending party."  *Olson v. Montana Rail Link, Inc.*, 227 F.R.D. 550, 552 (D. Mont. 2005) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001)).

    The problem with Epicentre's argument is that it has not established that any of the

information upon which CCI relies here was not properly disclosed in accordance with Rule 26(a). To be sure, Epicentre believes that CCI intends to rely on such documents at the time of trial, based on the corporate representative's responses, but that is an issue which cannot be resolved until CCI actually attempts to rely on such material. *See Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 488-89 (D. Colo. 1998). In response to Epicentre's motion for summary judgment on CCI's recoupment counterclaim, CCI has provided voluminous evidence in support of its position on Riverside's nonperformance under the contract. And, as explained in the immediately following section, this evidence is sufficient to raise a genuine issue of material fact on the issue of Riverside's performance. Epicentre does not provide any basis upon which to conclude that these specific documents, upon which CCI now relies, were not properly disclosed in accordance with Rule 26(a).

By its terms, the automatic exclusion sanction of Rule 37(c)(1) applies only to failures of a party to comply with the mandatory disclosure requirements of Rule 26(a) and the supplementation requirements of Rule 26(e); failure to comply with other discovery rules and obligations does not implicate Rule 37(c)(1). *See Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 157 (D.N.J. 1999). And it is Epicentre, as the party seeking preclusion, who bears the initial burden of demonstrating that CCI's evidence was subject to disclosure under Rule 26 and not disclosed in accordance with that rule. *See Ward v. National Geographic Society*, No. 99 Civ. 12385, 2002 WL 27777, at *1 (S.D.N.Y. Jan. 11, 2002); 7 MOORE'S FEDERAL PRACTICE § 37.60[2][a], at 37-117 (3d ed. 2000). Epicentre has provided "insufficient evidence that [CCI] violated" Rule 26(a), and thus Rule 37(c)(1) is inapplicable. *Taydus v. Cisneros*, 902 F. Supp. 288, 295 (D. Mass. 1995).

To be sure, the Court may sanction a party for failing to properly engage in the discovery process, including by failing to fully respond to interrogatory and discovery requests and by failing

21

to produce a knowledgeable Rule 30(b)(6) corporate representative.  Rule 37(a) permits the Court, upon motion of a party, to compel further discovery and impose monetary sanctions.  Rule 37(b) permits the Court to impose a range of sanctions for a party's failure to obey a court order regarding discovery, including the sanction of preclusion of evidence.  A similar range of sanctions is available under Rule 37(d) when a party fails to attend its own deposition or to serve interrogatory answers and respond to document production requests.  Unlike Rule 37(c)(1), however, these sanctions are not self-executing.  If Epicentre wishes to obtain such sanctions, it must comply with the procedural requirements of Rule 37(a) and (b).  *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 755-56 (7th Cir. 1994).

It may be that CCI will attempt, either in connection with a future motion or at trial, to introduce evidence which should have disclosed under Rule 26(a) or (e).  If it does so, the automatic exclusion sanction of Rule 37(c)(1) will be applicable.  It may also be that some of the evidence upon which CCI currently relies should have been disclosed under Rule 26(a) but was not; Epicentre, however, has not shown this to be the case, and thus has not met its initial burden of showing the applicability of Rule 37(c)(1).  Thus, at this stage of the proceedings, CCI's evidence is properly before the Court and, as explained in the next section, this evidence is sufficient to raise a genuine issue of material fact with respect to the amounts due and owing from CCI to Epicentre (as Riverside's assignee).  Accordingly, the Court should deny Epicentre's motion for summary judgment.[10]

2.      *Epicentre's Motion for Summary Judgment on CCI's Counterclaim (docket #47)*

---

[10]Much of the parties' arguments also focus on the change orders issued by CCI, in particular whether they were properly issued under the contract.  The underlying issue with respect to the change orders, however, is the same as the more general question regarding the breach of contract and recoupment claims–*i.e.*, Riverside's performance of its contractual obligations.

Epicentre's motion for summary judgment on CCI's recoupment counterclaim rests primarily on its legal arguments that it is not subject to recoupment based on its lack of a contractual relationship with CCI, its perfected security interest in the Riverside account receivable, and CCI's election of remedies. As explained above, the Court should resolve each of these legal arguments against Epicentre. In addition to these legal arguments, Epicentre advances two other arguments in support of its motion. The Court should conclude that each of these arguments is without merit.

First, Epicentre argues that recoupment is a statute of limitations defense, that such a defense has not been pleaded or supported by CCI, and that therefore recoupment is inapplicable to this case. This argument wholly misreads the cases addressing the recoupment defense. It is true that, as an equitable remedy, a defendant's recoupment claim is not subject to the statute of limitations. As the Sixth Circuit explained long ago, and the Michigan Supreme Court recently reaffirmed, "[t]he defense of recoupment exists as long as the plaintiff's cause of action exists and may be asserted, though the claim as an independent cause of action is barred by limitations." *City of Grand Rapids*, 136 F.2d at 619; *see also*, *Mudge*, 458 Mich. at 107, 580 N.W.2d at 855. This language says only that the defense of recoupment is not subject to a statute of limitations; it does not suggest, let alone compel, the rule advanced by Epicentre–to wit, that the defense is only available when the recoupment claim would be time barred if brought as an independent action. Nothing in the case law discussing recoupment suggests such a rule, and Epicentre has pointed to no case which so holds. On the contrary, because the recoupment defense "exists as long as the plaintiff's cause of action exists," *City of Grand Rapids*, 136 F.2d at 619, the defense presupposes that the plaintiff's action will be timely. *See Mudge*, 458 Mich. at 107-08, 580 N.W.2d at 855 (footnote omitted) ("Thus, the expiration of a limitation period does not foreclose a recoupment defense as long as the

23

plaintiff's action is timely. Given that plaintiffs' § 1983 complaint was timely filed, the expiration of the limitation period [with respect to the claim asserted as a basis for recoupment] was not a bar to defendants seeking recoupment."). In short, recoupment has nothing to do with the statute of limitations.

Second, Epicentre contends that the defense of recoupment is based on equitable considerations, and that CCI has failed to set forth an equitable reason why it is entitled to a reduction in the amount owing to Epicentre. Specifically, Epicentre contends that CCI's breach of contract allegations constitute legal, not equitable, bases for relief, and thus do not provide an adequate basis for recoupment. Again, Epicentre's argument misconstrues the case law. It is true that, in defining the recoupment defense, the Michigan Supreme Court explained that the recoupment defense "presents to the court an equitable reason why the amount payable to the plaintiff should be reduced[.]" *Mudge*, 458 Mich. at 107, 580 N.W.2d at 855. Taken in context, however, this statement does not bar what would otherwise be legal claims for relief–*e.g.*, breach of contract claims–from constituting an equitable reason why the amount payable should be reduced. The court explicitly adopted the *Am.Jur.2d* definition of the defense, which it makes it clear that breaches of contract by the plaintiff can give rise to a recoupment defense. *See Mudge*, 458 Mich. at 106, 580 N.W.2d at 855 (quoting 20 AM. JUR. 2D *Counterclaim* § 5) ("[t]he defense of recoupment refers to a defendant's right, in the same action, 'to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract.'"). And the Michigan cases applying recoupment have repeatedly done so in the context of a plaintiff's breach of its contractual obligations. *See, e.g.*, *Oakland Metal Stamping*, 352 Mich.

24

at 125, 89 N.W.2d at 506; *Ward*, 204 Mich. at 630, 171 N.W. at 450.

Thus, CCI has presented an "equitable" reason why Epicentre's recovery on the contract should be reduced, namely, Riverside's own breaches of the agreement. And CCI has presented sufficient evidence of Riverside's breaches to raise a genuine issue of material fact with respect to the recoupment defense. *See, e.g.*, CCI's Br., docket # 50, Exs. E-G, H-L, O-S. Accordingly, the Court should deny Epicentre's motion for summary judgment on CCI's recoupment counterclaim.

3.     *CCI's Motion for Summary Judgment on Epicentre's Claims (docket #50)*

In its motion for summary judgment, CCI asserts that the evidence it proffers in defense of Epicentre's motion for summary judgment on its recoupment counterclaim also entitles it to summary judgment with respect to Epicentre's breach of contract claim. The Court should disagree.

CCI's motion is premised on two bases: its evidence of Riverside's breaches and Epicentre's lack of any evidence that Riverside properly performed on the contract. CCI's motion is also premised, however, on its view that Epicentre bears the burden of demonstrating Riverside's performance. As explained above, however, it is CCI which bears the burden of proof and which must therefore show Riverside's nonperformance. And as also explained above, CCI's recoupment counterclaim is not a negation of the elements of Epicentre's claim, but an affirmative claim for relief, albeit defensive in nature. In other words, while CCI's evidence may establish that it has the right to cut down Epicentre's relief through recoupment, it does not go to whether Epicentre has properly pleaded or proved its breach of contract claims. And, given that CCI bears the burden of proof on this issue, the evidence CCI has produced is not so strong as to affirmatively establish each alleged breach of contract by Riverside beyond dispute. Accordingly, the Court should deny CCI's cross-motion for summary judgment on Epicentre's claims.

25

E.    *Epicentre's Motion to Strike CCI's Affirmative Defenses*

In addition to moving for summary judgment with respect to CCI's recoupment counterclaim, Epicentre also moves to strike several of CCI's affirmative defenses. Specifically, Epicentre seeks an order striking affirmative defenses 1, 3-8, 10-12, and 14-15. Although styled as a motion to strike, Epicentre really argues that CCI has no evidentiary support for its affirmative defenses. Accordingly, the Court should treat the motion as one for summary judgment under Rule 56, rather than as a motion to strike under Rule 12(f). For the reasons that follow, the Court should grant the motion with respect to affirmative defenses 5-8 and 14, deny the motion with respect to affirmative defenses 3, 10-12, and deny the motion as moot with respect to affirmative defenses 1, 4, and 15.

At the outset, I note that CCI has not met its burden in responding to Epicentre's motion by pointing out specific facts in support of its affirmative defenses. With respect to the defenses, CCI asserts only that it "relies on its affirmative defenses which have been shown to be supportable through discovery." CCI's Br., docket #50, at 20. This is insufficient to sustain CCI's summary judgment burden. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (a district court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claims."). Thus, to the extent that Epicentre has satisfied its burden of pointing out the absence of genuine issues of material fact with respect to each affirmative defense, it is entitled to summary judgment.

1.    *Affirmative Defenses 1, 4, & 15*

26

In its response to Epicentre's motion, CCI indicates that it is withdrawing its affirmative defense 1, 4, and 15. *See* CCI's Br. (docket #50), at 20. Accordingly, the Court should deem these affirmative defenses withdrawn, and should deny as moot Epicentre's motion with respect to these defenses.

2.     *Affirmative Defense 3*

Affirmative defense 3 sets forth an affirmative defense of recoupment. Epicentre argues that this defense should be striken for the same reasons it should be granted summary judgment on Epicentre's recoupment counterclaim. As explained above, Epicentre is not entitled to summary judgment on the recoupment counterclaim, and therefore the Court should deny Epicentre's motion to strike with respect to this affirmative defense.[11]

3.     *Affirmative Defense 5*

CCI's fifth affirmative defense asserts that the subcontract agreement between CCI and Riverside required CCI's written consent before assignment. Because CCI did not consent to the assignment to Epicentre, CCI alleges, the assignment is void. This defense fails as a matter of law.

The subcontract agreement provides, with respect to assignment, that "[Riverside] shall not assign this Agreement or sublet any part of the Work without the prior written consent of C.C.I." CCI's Br., docket #50, Ex. C, ¶ 33. As Epicentre correctly notes, however, Riverside did not assign the "Agreement" to Epicentre, but merely Riverside's right to payment on the contract–*i.e.*, the

---

[11]Although not raised by Epicentre, there is a question as to whether this affirmative defense is redundant in light of the recoupment counterclaim. As explained in the discussion of the counterclaim, however, there is a lack of clarity in Michigan law as to whether recoupment is properly pleaded as a counterclaim or as an affirmative defense. In light of this lack of clarity, and the fact that CCI's burden is the same regardless of whether recoupment is treated as a counterclaim or as an affirmative defense, it is better to permit the affirmative defense to remain rather than striking it as redundant.

account receivable.  Under the *Restatement* rule, "[u]nless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition."  RESTATEMENT (SECOND) OF CONTRACTS § 322(1).  Michigan courts follow this general rule.  *See Wonsey v. Life Ins. Co. of N. Am.*, 32 F. Supp. 2d 939, 943 (E.D. Mich. 1998) (Gadola, J.) (applying Michigan law); *Bay Bus. Servs., Inc. v. Jolitz*, No. 247992, 2004 WL 2389959, at *2 (Mich. Ct. App. Oct. 26, 2004).  This rule is also reflected in § 9-406(4) (formerly § 9-318(4)) of the UCC.  *See* MICH. COMP. LAWS § 440.9406(4). Here, the language of the agreement indicates that the anti-assignment provision was designed to prevent Riverside from assigning its own duties under the contract.  *See* CCI's Br., docket #50, Ex. C, ¶ 33 (focusing on the sublet of any work of Riverside and requiring that any approved assignee agree to be assume all of Riverside's obligations and responsibilities under the contract).  CCI has presented no evidence of other circumstances which would indicate a contrary interpretation of the contract language in light of the general rule stated above.  Accordingly, the Court should conclude that Epicentre is entitled to summary judgment on affirmative defense 5.

       4.    *Affirmative Defense 6*

CCI's sixth affirmative defense avers that Epicentre's claim is barred by estoppel and laches. This affirmative defense fails as a matter of law.

"The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant.  The defendant must prove a lack of due diligence on the part of the plaintiff resulting in some prejudice to the defendant."  *Gallagher v. Keefe*, 232 Mich. App. 363, 369, 591 N.W.2d 297, 300 (1998). Here, CCI can establish neither element of a laches defense.  "Mere delay in asserting a claim for

28

a period less than that in the statute of limitations does not constitute such laches as will defeat recovery in law or equity." *Eberhard v. Harper-Grace Hosps.*, 179 Mich. App. 24, 37, 445 N.W.2d 469, 474 (1989) (citing *Kaminski v. Wayne County Bd. of Auditors*, 287 Mich. 62, 67, 282 N.W. 902, 904 (1938)).  While there may be exceptional circumstances which would permit a finding of laches based on a delay shorter than the limitations period, *see id.*, CCI does not identify any such exceptional circumstances here.  Thus, because there is no allegation that Epicentre's claim was not filed within the limitations period, CCI has not shown unreasonable delay.  Likewise, CCI has failed to show prejudice from any delay by Epicentre in filing suit.  CCI does not allege the loss of any evidence or witnesses, nor does it allege any material change in its position as a result of Epicentre's alleged delay in filing suit.  And, again, CCI's Rule 30(b)(6) representative could not identify any facts supporting CCI's laches defense.  *See* Epicentre's Br., docket #47, Ex. 3, Depo. Tr. of Mark T. Small, at 133.  Thus, CCI has failed to establish a genuine issue of material fact with respect to either element of its laches defense.

Likewise, CCI's estoppel defense fails as a matter of law.  "Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v. Zahorik*, 460 Mich. 320, 335, 597 NW2d 15, 22 (1999) (internal quotation omitted).  CCI has identified no facts which Epicentre misrepresented and upon which CCI relied to its detriment.  Accordingly, the Court should conclude that Epicentre is entitled to summary judgment with respect to affirmative defense 6.

5.     *Affirmative Defense 7*

29

Affirmative defense 7 alleges that Epicentre's claim is barred by the doctrine of unclean hands.  The unclean hands doctrine reflects the common law rule that a court in equity will not protect one who has himself been inequitable.  *See Rose v. National Auction Group, Inc.*, 466 Mich. 453, 462-63, 646 N.W.2d 455, 460-61 (2002).  In other words, "one who seeks the aid of equity must come in with clean hands."  *Id.* at 463, 646 N.W.2d at 461 (internal quotation omitted).  However, the clean hands doctrine is inapplicable here because Epicentre is not "seeking the aid of equity."  Epicentre is pursuing claims at law for breach of contract and open account.  Further, Epicentre seeks no equitable relief, but only money damages.  Because Epicentre seeks only legal relief on claims at law, the equitable doctrine of unclean hands is not applicable here.  *See id.* at 467-68, 646 N.W.2d at 463; *Paul v. U.S. Mutual Fin. Corp.*, 150 Mich. App. 773, 786, 389 N.W.2d 487, 493 (1986).  Accordingly, the Court should grant summary judgment to Epicentre with respect to this affirmative defense.

6.    *Affirmative Defense 8*

CCI's eighth affirmative defense alleges that Epicentre's claims are barred by the doctrine of waiver.  "'[W]aiver is the intentional relinquishment of a known right.'" *Sweebe v. Sweebe*, 474 Mich. 151, 156-57, 712 N.W.2d 708, 712 (2006) (quoting *Bailey v. Jones*, 243 Mich. 159, 162, 219 N.W. 629, 630 (1928)).  "It necessarily follows that conduct that does not express an intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence." *Moore v. First Sec. Cas. Co.*, 224 Mich. App. 370, 376, 568 N.W.2d 841, 844 (1997).  CCI has pointed to no evidence which demonstrates that Epicentre (or Riverside) intentionally relinquished any of its rights under the contract.  Accordingly, the court should grant summary judgment to Epicentre with respect to this affirmative defense.

30

7.      *Affirmative Defenses 10-12*

Affirmative defenses 10 through 12 allege that Epicentre's claims are subject to set-off and back charges for amounts owed to Riverside's suppliers, to CCI for defective or incomplete work, and to CCI for damages caused by Riverside's breach of the contract.  As explained in connection with CCI's recoupment claim, set-off is a conceptually distinct form of relief and is more limited, with respect to assignees, than is recoupment.  Nevertheless, neither party addresses the propriety of CCI's set-off claims apart from the issues raised with respect to recoupment.  That is, Epicentre argues that CCI is not entitled to set-off for the same reasons that it is not entitled to recoupment–namely, Epicentre's lack of contractual relationship with CCI and CCI's election of remedies.  Regardless of whether CCI may ultimately pursue set-off against Epicentre, the bases upon which Epicentre moves for summary judgment with respect to the set-off defenses fail for the same reasons they fail with respect to recoupment.  Accordingly, the Court should deny Epicentre's motion for summary judgment with respect to these defenses.

8.      *Affirmative Defense 14*

In its fourteenth affirmative defense, CCI alleges that it never contracted with Epicentre or otherwise promised to pay any sum to Epicentre.  This defense fails as a matter of law.  CCI does not dispute that it contracted with Riverside and that it agreed to pay Riverside in accordance with the subcontract agreement.  Nor does CCI dispute the existence of the assignment of the account from Riverside to Epicentre.  And, as explained in connection with CCI's fifth affirmative defense, this assignment was valid as a matter of law.  Thus, the lack of a contractual relationship between CCI and Epicentre provides no defense to Epicentre's claim.  *See City of Charlevoix v. Michigan Municipal League Liability & Property Pool*, No. 271405, 2006 WL 3733470, at *2 (Mich. Ct. App.

Dec. 19, 2006).  Accordingly, the Court should grant summary judgment to Epicentre on affirmative defense 14.

F.      *Conclusion*

In view of the foregoing, the Court should deny the parties' cross motions for summary judgment on Epicentre's claims (docket #48 and #50).  The Court should grant in part and deny in part Epicentre's motion for summary judgment on CCI's counterclaim and motion to strike affirmative defenses (docket #47).  Specifically, the Court should grant summary judgment to Epicentre on CCI's affirmative defenses 5-8 and 14, and should deny Epicentre's motion with respect to the recoupment counterclaim and the remaining affirmative defenses.

III.    **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall not be more than five (5) pages in length unless by

motion and order such page limit is extended by the Court.  The response shall address specifically,

and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 3/7/07

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on March 7, 2007.

s/Eddrey Butts
Case Manager