UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EPICENTRE STRATEGIC CORPORATION -
MICHIGAN, a Michigan corporation,

    Plaintiff/counter-defendant,

  v.              CASE NO.  04-CV-40278-FL
                 JUDGE PAUL V. GADOLA
CLEVELAND CONSTRUCTION, INC., an  MAGISTRATE JUDGE PAUL J. KOMIVES
Ohio corporation,

    Defendant/counter-claimant,

and

CLEVELAND CONSTRUCTION INC., an
Ohio corporation,

    Third-party plaintiff,

  v.

RIVERSIDE MASONRY, L.L.C., d/b/a
C&R MASONRY OF MICHIGAN, a
Michigan corporation,

    Third-party defendant.

_____/

**OPINION AND ORDER**
**(1) GRANTING IN PART AND DENYING IN PART CLEVELAND CONSTRUCTION,**
**INC.'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST**
**THIRD-PARTY DEFENDANT RIVERSIDE MASONRY, L.L.C. (Doc. Ent. 38) and**
**(2) DIRECTING THE CLERK OF THE COURT TO ENTER DEFAULT AS TO THIRD-**
**PARTY DEFENDANT RIVERSIDE MASONRY, L.L.C. PURSUANT TO RULE 55(a)**


Table of Contents

I.  OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1

A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.     The Instant Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C.     CCI's Motion for Entry of Default and Default Judgment against Riverside . . . . 6

D.     Fed. R. Civ. P. 55 ("Default") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**E.     CCI's Motion for Entry of Default and Default Judgment against Riverside is
          granted in part and denied in part.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.     CCI's motion is not denied on the basis that it is untimely. . . . . . . . . . 10

        2.     Riverside has defaulted, because it "has failed to plead or otherwise defend
               as provided by these rules[.]"  Fed. R. Civ. P. 55(a). . . . . . . . . . . . . . . . 12

        3.     "[T]he clerk shall enter the party's default."  Fed. R. Civ. P. 55(a). . . . . 16

        4.     Epicentre, a secured creditor and a real party in interest, may not defend
               CCI's third-party complaint (i.e., file an answer) on behalf of Riverside, a
               named party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

II.     ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

I.      **OPINION**

A.      **Background**

On or about January 10, 2001, Cleveland Construction, Inc. (CCI) "entered into a

Construction Contract Agreement with Wal-Mart Stores, Inc. . . . pursuant to the terms of which CCI

agreed to provide labor and materials necessary for the construction of a Wal-Mart Store and Sam's

Club in Canton, Michigan[.]" Doc. Ent. 4 ¶ 8.  On January 25, 2001, subcontractor Aurelio Cence

(CEO of C & R Masonry) and contractor Keith E. Ziegler (Vice President Construction of CCI)

entered into a subcontract agreement concerning the Canton Wal-Mart/Sam's Club project.  Doc.

Ent. 4 ¶ 9, Doc. Ent. 38 Ex. A.  The "disputes" portion of that agreement states, in part:

> In the event that Subcontractor [C & R Masonry] shall initiate legal proceedings,
> litigation, lawsuit and/or arbitration for additional costs, extensions of time, damages
> for delay or other causes in accordance with the Contract Documents, and said
> Subcontractor is unsuccessful in its cause of action against C.C.I., or, alternatively,
> if C.C.I. must initiate legal proceedings, litigation, a lawsuit and/or arbitration for the
> enforcement of any provision of this Subcontract, Subcontractor shall be liable to
> C.C.I. for any and all expenses arising out of such litigation and/or arbitration,
> including but not limited to expenses, damages, litigation costs and/or attorneys fees.

Doc. Ent. 38 Ex. A ¶ 31(e).  With respect to "effect of default by subcontractor", the agreement

provides in part:

> In the event that . . .C.C.I.'s costs of completion, damages, expenses incurred and
> overhead and profit exceed the balance of the Subcontract Price, Subcontractor shall
> pay to C.C.I. all of C.C.I.'s costs of completion together with any and all damages
> and expenses incurred by C.C.I. as a result of the Subcontractor's Default, including
> but not limited to attorneys fees, together with Twenty-five (25%) for C.C.I.'s
> overhead and profit, the reasonableness of which is specifically agreed to by the
> Subcontractor, less the balance of the Subcontract Price.

Doc. Ent. 38 Ex. A ¶ 32(d).

On or about November 27, 2001, Cence signed a continuing security agreement by which

Bank One was granted a continuing security interest in Riverside's accounts receivable, inventory,

3

equipment and instruments.  Doc. Ent. 40-4 at 1, 5.  With regard to accounts receivable, the agreement stated in part:

> It is agreed that, at any time the Bank elects, it shall be entitled, in its own name or in the name of the Debtor [Riverside Masonry, L.L.C.] or otherwise, but at the expense and cost of the Debtor [Riverside Masonry, L.L.C.], to collect, demand, receive, sue for or compromise any and all Accounts Receivable, and to give good and sufficient releases, to endorse any checks, drafts or other orders for the payment of money payable to the Debtor [Riverside Masonry, L.L.C.] in payment and, in its discretion, to file any claims or take any action or proceeding which the Bank may deem necessary or advisable.

Doc. Ent. 40-4 at 3.

When Riverside defaulted on its obligations, Banc One invoked its remedies under Article 9 of the Uniform Commercial Code.  Litigation ensued in the Wayne County Circuit Court involving Banc One, Riverside, and Epicentre.  *Banc One, NA, et al. v. Riverside Masonry, L.L.C., et al.*, Wayne County Circuit Case No. 02-241534-PD.  The parties eventually reached a settlement agreement, resulting in Banc One assigning to Epicentre its interests in Riverside's accounts receivable.[1]  On March 9, 2004, the CEO of Epicentre, as well as an officer of Banc One Leasing Corporation and a First Vice President of Bank One, NA, signed an assignment of debt and security interest.  Doc. Ent. 40-3.  By this document, Bank One assigned to Epicentre "the full amount owed to Bank One, NA under [certain] loan documents between Riverside and Bank One, NA[.]" Doc. Ent. 40-3 at 1.[2]

B.    **The Instant Case**

In August 2004, plaintiff Epicentre Strategic Corporation - Michigan (Epicentre) filed this

---

[1]Banc One and Banc One Leasing are now owned by JPMorgan Chase Bank, N.A.  For simplicity, this opinion and order refers to these non-parties collectively as Banc One.

[2]The settlement agreement between Epicentre, Bank One and Riverside is confidential, but the assignment is not confidential.  Doc. Ent. 40 ¶ 1.

action against CCI in Wayne County Circuit Court. (Doc. Ent. 1 [Compl.]). In this case, Epicentre seeks to collect on a debt allegedly owing to Riverside, standing in Riverside's stead by virtue of Banc One's perfected security interest in Riverside's accounts and the subsequent assignment of that interest to Epicentre.

According to the complaint, "Epicentre has acquired the interests of Bank One and Banc One Leasing in all accounts, intangibles, property claims and amounts due and owing to [Riverside] and is asserting its claims against [CCI]." Compl. ¶ 4. Plaintiff alleges that CCI "requested Riverside to provide various construction services with respect to the Sams/Canton construction project. And in turn, [CCI] promised to pay all sums due and owing to Riverside and its successor in interest, Epicentre, as a result of those services provided." Compl. ¶¶ 8, 13. The claims against defendant CCI include (I) breach of contract and (II) open account. Compl. ¶¶ 7-11, 12-17. Epicentre seeks damages in the amount of $277,781.66. (Doc. Ent. 1 at 12).

CCI removed the case to this Court on September 24, 2004 pursuant to 28 U.S.C. § 1441 ("Actions removable generally") and diversity of citizenship (28 U.S.C. § 1332). (Doc. Ent. 1 at 1-3). On the same date, it filed a counterclaim for recoupment of $329,324.86 from Epicentre. (Doc. Ent. 3).[3] CCI claims that Epicentre "is liable to CCI under Michigan's codification of article Nine

_____

[3]In an August 19, 2005 affidavit, Mark Small, CCI Senior Vice President, attests that "$329,258.36 [is] now due and owing from Riverside to CCI under said Subcontract[.]" Doc. Ent. 38 Ex. I ¶ 4. Allegedly, this is due in part to Riverside's "defective work". Doc. Ent. 38 Ex. I ¶ 3. The amount of $329,258.36 is arrived at by making certain subtractions from the original contract amount, including the amount paid to date. Doc. Ent. 38 Ex. I ¶ 4. The $350,544.19 cost of masonry repairs (Change Order 8) and the $87,636.05 administrative fee for masonry repairs (Change Order 9) are set forth in a "Masonry Supplementation & Repair Costs" spreadsheet. Doc. Ent. 38 Ex. C.

Epicentre claims that this counterclaim "is improper as under no circumstance, and certainly not pursuant to Article 9 of the UCC, could CCI claim that Epicentre would be liable for any damages that it claims as to Riverside. Epicentre is merely Riverside's secured creditor. CCI

of the Uniform Commercial Code, [Mich. Comp. Laws §§ 440.9101-440.9994]." Doc. Ent. 3 ¶ 27. On October 12, 2004, plaintiff filed an answer to CCI's counterclaim. (Doc. Ent. 6).

Furthermore, CCI filed a third-party complaint against Riverside Masonry, L.L.C. (Riverside) for (I) breach of contract; (II) breach of warranties; and (III) indemnification. Doc. Ent. 4. On February 9, 2005, Epicentre, on behalf of Riverside, filed an answer to CCI's third-party complaint against Riverside and affirmative defenses. (Doc. Ent. 18).[4]

## C.     CCI's Motion for Entry of Default and Default Judgment against Riverside

On September 6, 2005, CCI filed a motion for entry of default and default judgment against third-party defendant Riverside. (Doc. Ent. 38 [Mtn.]). According to CCI, it has "incurred damages of $329,258.36 as a result of Riverside's breach of the written contract upon which Epicentre seeks to collect." Mtn. ¶ 2, ¶ 6. CCI claims that "Riverside has failed and refused to answer, appear or otherwise defend the third-party complaint." Doc. Ent. 38 ¶ 19. CCI takes issue (improper, irrelevant, immaterial, legally insufficient, frivolous) with the February 9, 2005 answer and affirmative defenses, Doc. Ent. 38 ¶¶ 19-24. Also, CCI maintains that "Riverside has utterly failed to demonstrate any clear purpose to defend the Third-Party Complaint of CCI, and the entry of Default is appropriate." Doc. Ent. 38 ¶ 25. CCI seeks (1) entry of a default against Riverside pursuant to Fed. R. Civ. P. 55 and (2) entry of a default judgment against Riverside in favor of CCI in the amount of $329,258.36. Doc. Ent. 38 at 5-6, 12.[5]

---

may argue that it is entitled to set offs as to the amounts owed to Riverside, but it cannot attempt to claim that the amounts are due from Riverside's secured creditor Epicentre." Doc. Ent. 40 at 3 ¶ 9.

[4]The certificate of service for this document is dated October 12, 2004. Doc. Ent. 18 at 10.

[5]A proposed "Default Judgment in Favor of Cleveland Construction, Inc. and against Riverside Masonry L.L.C., d/b/a/ C&R Masonry of Michigan" is attached to the motion. Doc.

On September 16, 2005, Epicentre (individually and as Riverside's attorney-in-fact) filed a response to CCI's motion.  (Doc. Ent. 40 [Rsp.]).  Epicentre argues that (A) CCI's motion is untimely and any objection to the answer filed by Epicentre on behalf of Riverside is waived; (B) an answer has been filed on behalf of Riverside rendering CCI's motion improper; and (C) under any circumstance, an entry of a default judgment against Riverside is improper.

On September 23, 2005, CCI filed a reply.  (Doc. Ent. 41 [Rpl.]).  It argues that (A) "Riverside is in default and CCI's motion is timely filed[,]" because "[t]here is no time requirement within which CCI was obliged to seek default and default judgment against Riverside," and "CCI is under no obligation to move to strike Epicentre's purported answer - the answer is simply of no effect vis-a-vis Riverside[;]" (B) "Epicentre has no right to defend CCI's claim against Riverside[,]" because "the fact that Epicentre may be a secured creditor of Riverside's Collateral ___has no relationship to CCI's affirmative claims against Riverside for Riverside's failure to properly construct masonry___[;]" (C) "CCI is not attempting to obtain a 'windfall'[;]" and (D) "Epicentre's rights are not affected by Riverside's default."

On March 15, 2006, CCI filed a supplemental brief.  (Doc. Ent. 46 [Supp. Br.]).  CCI contends that Aurelio Cence's February 8, 2006 deposition testimony supports the instant motion in several respects.  Specifically, CCI argues that "Riverside could not have answered the third-party complaint because Riverside is not represented by an attorney as is required by Michigan law[;]" "Riverside has no meritorious defense, at all relevant times Riverside had ceased doing business, and opposing the third-party complaint would be futile[;]" and "Riverside does not have any project

_____

Ent. 38 Ex. J.

records whatsoever."[6]

**D.      Fed. R. Civ. P. 55 ("Default")**

Default is governed by Fed. R. Civ. P. 55.  CCI seeks entry of default pursuant to Fed. R. Civ. P. 55(a) and entry of default judgment pursuant to Fed. R. Civ. P. 55(b)(2).  Doc. Ent. 38 at 8.

**1.**      With regard to the entry of default, Rule 55 states:  "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).

**2.**      With regard to a judgment of default, Rule 55 states:

"Judgment by default may be entered as follows:

(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties

---

[6]On May 16, 2006, Judge Gadola referred this motion to me for report and recommendation. (Doc. Ent. 64).

when and as required by any statute of the United States.

Fed. R. Civ. P. 55(b).  "Under a plain reading of Rule 55(b)(1), plaintiff's burden is to establish that the damages requested are such that may be computed to a sum certain and to present an affidavit computing damages." *Meyer v. City of Cincinnati*, Nos. 90-3679, 90-3805, 1991 WL 165584, **3 (6th Cir. Aug. 27, 1991) (unpublished).

"Rule 55(b)(2) allows the court in its discretion to enter a judgment of default where the party entitled to the judgment applies to the court, and if the party against whom it is sought has appeared in the matter, that party must be served written notice of the application at least three days prior to the hearing on such application." *United States v. Ragin*, No. 94-1970, 1997 WL 268576, **2 (4th Cir. May 21, 1997) (citing Fed.R.Civ.P. 55(b)(2)) (unpublished).  "Judgments by default are a drastic remedy and should be resorted to only in extreme situations." *Charlton L. Davis & Co., P. C. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir. 1977) (citing *E. F. Hutton & Company v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972)).  *See also Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir. 1977).

**3.**     With regard to setting aside default, Rule 55 provides:  "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Fed. R. Civ. P. 55(c).

**4.**     Also, Rule 55 provides that "[t]he provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim.  In all cases a judgment by default is subject to the limitations of Rule 54(c)."  Fed. R. Civ. P. 55(d).

**E.     CCI's Motion for Entry of Default and Default Judgment against Riverside is granted in part and denied in part.**

9

**1.     CCI's motion is not denied on the basis that it is untimely.**

As an initial matter, Epicentre claims that CCI's motion is untimely and "any objection to the answer filed by [Epicentre] on behalf of Riverside is waived[.]" In support of this argument, Epicentre contends that "any objection to the pleading filed by [Epicentre] on behalf of Riverside should have been raised at the time of [Epicentre's] filing." Noting CCI's claim that an answer should have been filed by March 10, 2005, Epicentre notes that the February 9, 2005 answer was timely filed. Epicentre notes that "[n]o objection was filed by [CCI] and no Request for Entry of Default was filed, nor was any Motion for Entry of Default filed." Epicentre contends that there is no excuse for the seven month time period between the February 9, 2005 answer and the September 6, 2005 instant motion; therefore, CCI "has waived any objections to the [a]nswer filed on behalf of Riverside." Doc. Ent. 40 at 16. Within its argument that an entry of default judgment would be improper, Epicentre states that if CCI did not believe Epicentre's answer on behalf of Riverside was proper, "the appropriate course of action would have been to file a Motion to Strike the Answer." Doc. Ent. 40 at 18.

CCI argues that "Riverside is in default and CCI's motion is timely filed." Doc. Ent. 41 at 1. In support of this argument, CCI contends that the February 9, 2005 answer "is not an answer to deny CCI's claims against Riverside[.]" Doc. Ent. 41 at 1-2. Citing Fed. R. Civ. P. 55(a) and referencing the Federal Rules of Civil Procedure, CCI argues that "[t]here is no time requirement within which CCI was obliged to seek default and default judgment against Riverside, especially in light of the fact that CCI was forced to obtain alternate service upon Riverside." Doc. Ent. 41 at 2.

CCI's motion is not denied on the basis that it is untimely. First, the language of Rule

10

55(b)(2) does not set forth a deadline for filing a motion for default judgment. The only time limit discussed in Fed. R. Civ. P. 55(b)(2) is the requirement of a three-day notice of the application prior to a hearing on the motion when the party against whom the default judgment is sought has appeared in the action. As I conclude below, Riverside itself (or C & R Masonry) is not represented by counsel and has not itself filed a pleading in this case.

Second, it is not clear that CCI should have filed an objection to the February 9, 2005 answer. Fed. R. Civ. P. 12(f) states that:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f). Pursuant to Fed. R. Civ. P. 7(a), absent a court-ordered reply to a third-party answer, no responsive pleading to the February 9, 2005 answer would be allowed; therefore, a motion to strike the February 9, 2005 filing would have been due twenty (20) days after service of the filing. However, as I conclude below, Riverside itself is unrepresented by counsel, and the two documents on which it is listed as a "filer" have really been filed by Epicentre on Riverside's behalf. Furthermore, the instant motion takes issue with the legal sufficiency of the filing. CCI claims that the filing is "irrelevant, immaterial and legally insufficient as an Answer on behalf of Riverside to the Third-Party Complaint." Doc. Ent. 38 at 11. CCI claims it "is under no obligation to move to strike Epicentre's purported answer - the answer is simply of no effect vis-a-vis Riverside." Doc. Ent. 41 at 2 n.2. It would be more prudent for the Court to address the propriety of the answer as it relates to the third-party defendant Riverside.

Third, Epicentre does not cite any authority for its argument that CCI's September 6, 2005

motion is untimely. Nor does Epicentre cite any authority for its argument that CCI should have filed an objection to the answer. Doc. Ent. 40 at 15. Although default judgment is a severe remedy, I hesitate to recommend denial of such a motion on procedural grounds without an on point example. *Phillips v. Flynn*, 61 F.R.D. 574, 576, 578 (E. D. Pa.1974) ("It was not until November 9, 1973--almost one year after the entry of default and eleven (11) months after the appearance for Flynn--that Flynn filed a petition to set aside the default[,]" and "[i]n view of the confusion surrounding the docket entries, Flynn's petition will be granted and will not be treated as untimely even though it comes eleven (11) months after his general appearance in the case."); *Heber v. United States*, 145 F.R.D. 576, 577-578 (D. Utah 1992) (where the government's answer was initially due on August 10, 1992, was later due on August 31, 1992 and was filed on September 23, 1992, the Court stated that "the substance of Heber's motion [to strike defendant's answer and to dismiss] is that a defendant's failure to file a timely response [to the May 29, 1992 complaint] is a default, and that his Motion to Strike is equivalent to a motion for entry of default under Federal Rule of Civil Procedure 55(a)[,]" and "the court denies Heber's Motion to Strike.").

For the foregoing reasons, CCI's motion is not denied on the basis that it is untimely. The motion will be addressed on the merits.

**2.      Riverside has defaulted, because it "has failed to plead or otherwise defend as provided by these rules[.]" Fed. R. Civ. P. 55(a).**

As previously noted, CCI claims that "Riverside could not have answered the Third-Party Complaint because Riverside is not represented by an attorney as is required by Michigan law." Doc. Ent. 46 at 2. In support of its argument, CCI cites to Cence's February 8, 2006 deposition, wherein Cence testified that C & R Masonry was not currently represented by attorneys. Doc. Ent. 46 Ex. C p. 174.

12

"The appearance required by [Rule 55(b)(2)] has been broadly defined, and not limited to a formal court appearance." *Charlton L. Davis & Co.*, P. C., 556 F.2d at 309. "Though it is true that defendants made no formal appearance and filed no papers, courts now look beyond the presence or absence of such formal actions to examine other evidence of active representation. Several cases have held that informal contacts between parties may constitute an appearance. The contacts must 'indicate the defaulting party intends to defend the suit.'" *Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270, 271 (6th Cir. 1981) (quoting 6 Moore's P 55.05(3)).

"Normally, an appearance in an action 'involves some presentation or submission to the court.'" 10A Wright, Miller & Kane, Fed. Prac. and Proc. § 2686 (3d ed.). "Defendant's filing of an answer constituted an 'appearance' for purposes of Rule 55, and thus the subsequent entry of a default judgment by the clerk was improper, since only the court could enter a default judgment once defendant had made an appearance in the case." 10A Wright, Miller & Kane, Fed. Prac. and Proc. § 2686 (3d ed.) (citing *United States v. Smith*, 212 F.R.D. 480 (M.D.N.C. 2002)). *See also Ragnone v. Wirsing*, 141 Mich.App. 263, 265-266, 367 N.W.2d 369, 370 (1985) (on appeal from entry of default judgment, "defendant's attorney communicated with plaintiff for the purpose of negotiating a settlement, wrote a letter seeking an extension of time for filing an answer, and even attended the scheduled meeting. We find this to be consistent with the policy expressed in *Deeb [v. Berri, 118 Mich. App. 556, 325 N.W.2d 493 (1982)]*, as defendant's attorney was aware of the proceedings and demonstrated an intention to appear."); *Law Offices of Lawrence J. Stockler, P.C. v. Semaan*, 135 Mich. App. 545, 551, 355 N.W.2d 271, 274 (1984) (on appeal from order denying motion to set aside a default and default judgment, "defendant's belated filing of an answer constituted an appearance.").

For several reasons, I conclude that Riverside is unrepresented by counsel. First, examination of the docket reveals three notices of appearance (Doc. Entries 10, 12 and 45) on Epicentre's behalf, as well as the May 19, 2005 attorney substitution (Doc. Ent. 23) and April 10, 2006 addition of an attorney on CCI's behalf. A formal "appearance" of counsel on Riverside's behalf has not been filed.

Second, the documents purportedly filed by Riverside have not been filed by its counsel and have only been filed on Riverside's behalf. The docket indicates that third-party defendant Riverside has been a "filer" of two documents in this case: (1) on February 9, 2005, Epicentre, on behalf of Riverside, filed an answer to CCI's third-party complaint against Riverside and affirmative defenses (Doc. Ent. 18 at 2) and (2) on September 16, 2005, Epicentre, individually and as Riverside's attorney-in-fact, filed a response to CCI's motion for entry of default and default judgment against Riverside. (Doc. Ent. 40). Both the February 9, 2005 answer to third party complaint and the September 16, 2005 response to the instant motion were electronically filed by attorney Mychalowych, one of Epicentre's attorneys. (Doc. Ent. 18 at 5, Doc. Ent. 40 at 8). However, a fair reading of these documents suggests that these documents have been filed on Riverside's behalf by Epicentre, rather than by counsel for Riverside. The firm of Haliw, Siciliano and Mychalowych is described as "[a]ttorneys for [p]laintiff" on both filings. Furthermore, the answer's and affirmative defenses' introductory paragraphs set forth Epicentre's statements "on behalf of Third Party Defendant Riverside Masonry, LLC to protect its [presumably Epicentre's] claim and security interest[;]" the answer's prayer for relief describes the "Third-Party Defendant['s]" requests; but the signature pages of the answer, affirmative defenses and proof of service describe the firm of Haliw, Sicilian and Mychalowych as "[a]ttorneys for [p]laintiff on

14

behalf of Third Party Defendant Riverside Masonry, LLC". Doc. Ent. 18 at 2, 5, 7, 8, 10. Additionally, the response is titled as belonging to "[p]laintiff, [Epicentre], individually and as [Riverside]'s attorney in fact[;]" the introductory paragraph sets forth Epicentre's statements; and the prayer for relief describes Epicentre's requests. Doc. Ent. 40 at 1-2, 6. Therefore, neither the answer to the third-party complaint nor the response to the instant motion constitute an appearance on behalf of Riverside.

This conclusion is buttressed by the substance of Epicentre's response to the instant motion. According to CCI, "Epicentre does not deny that Riverside itself has failed to appear or otherwise defend the Complaint." Doc. Ent. 41 at 3. This does not appear to be the case, because CCI's motion states that "Riverside has failed and refused to answer, appear or otherwise defend the Third-Party Complaint[,]" Doc. Ent. 38 ¶ 19, while Epicentre's response states that, "[p]laintiff denies the allegations set forth in paragraph 19 as said allegations are untrue." Doc. Ent. 40 ¶ 19. Logically, then, although Epicentre does not admit to representation of Riverside, it must not be Epicentre's position that Riverside has failed and refused to answer, appear or otherwise defend the September 24, 2004 third party complaint. However, even considering that Epicentre's counsel in the instant case represented Riverside in the aforementioned state court case, it is important to note that CCI contends that "counsel for Epicentre has had, and still has, a relationship with Riverside and its principal[,]" and Epicentre "denies that it has any 'relationship' with Riverside, a separate legal entity apart from its principal Aurelio Cence." Doc. Ent. 38 at 4 ¶ 23; Doc. Ent. 40 at 5 ¶ 23.

Having arrived at the conclusion that Riverside is unrepresented, it is appropriate to note that "[a] corporation cannot litigate in federal court pro se." *Old Ben Coal Company v. Office of Workers' Compensation Programs*, No. 06-2189, __ F.3d __ (7th Cir. 2007) (citing *Rowland v.*

*California Men's Colony*, 506 U.S. 194, 201-202 (1993) and *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). *See also Wimberly v. Embridge*, 93 Fed.Appx. 22, *23 (6th Cir. 2004) ("A corporation . . . must be represented in court by an attorney and may not be represented by an officer."); *United States v. 9.19 Acres of Land, More or Less, in Marquette County, Mich.* , 416 F.2d 1244, 1245 (6th Cir. 1969) ("28 U.S.C. § 1654 (1964) . . . has been uniformly construed to mean that a corporation cannot appear otherwise than through an attorney. "); *Nat'l Assn. Of Credit Management v. Hubbard Lumber, Inc.*, 831 F.Supp. 588, 592 (W. D. Mich. 1993) (citing *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir.1984)) ("It is the rule of the Sixth Circuit that a corporation cannot appear in federal court except through an attorney."); and *Detroit Bar Ass'n v. Union Guardian Trust Co.*, 282 Mich. 707, 711, 281 N.W. 432 (1938) (citing cases) ("a corporation, because of the very fact of its being a corporation, can appear only by attorney, regardless of whether it is interested in its own corporate capacity or in a fiduciary capacity.").

**3.    "[T]he clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).**

**a.**    "An entry of default is not a default judgment."  *Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1530 (11th Cir. 1985).  "[A]n entry of default, and not a default judgment, appears in the record before the court.  The two concepts are distinct and must be treated separately[.]" *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 950 (N. D. Ind. 1975).

"When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under 55(b)." *Johnson v. Dayton Electric Manufacturing Co.*, 140 F.3d 781, 783 (8th Cir. 1998).  *See also O'Grady v. Johnson*, 2006 WL 2403579, 4 (D. Minn. 2006) (slip copy) ("there has been no entry of default

16

under Rule 55(a) in this case, a condition precedent to the entry of default judgement under Rule 55(b).”); *Ramada Franchise Systems, Inc. v. Baroda Enterprises*, LLC, 220 F.R.D. 303, 305 (N. D. Ohio 2004) (“[A]n entry of default is a prerequisite to a default judgment.”); *In re Schulman*, 196 B.R. 688, 692 (Bkrtcy. S.D.N.Y. 1996) (“When a defendant fails to answer, the first step leading to a default judgment is the entry of default with the clerk of the court.”); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (“The entry of default is an interlocutory act and, as such, a non-final order.”); *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir. 1986) (commenting that “entry of default is just the first procedural step on the road to obtaining a default judgment[.]”).[7]   As one Court has stated:

> The procedural steps contemplated by the Federal Rules of Civil Procedure following a defendant's failure to plead or defend as required by the Rules begin with the entry of a default by the clerk upon a plaintiff's request. Rule 55(a).  Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside. If that motion is not made or is unsuccessful, and if no hearing is needed to ascertain damages, judgment by default may be entered by the court or, if the defendant has not appeared, by the clerk. Rule 55(b).  Finally, Rule 55(c) authorizes a motion to set aside a default judgment pursuant to Rule 60(b).

*Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

In *Meehan*, the Court observed that “[t]he omission of the entry of a default was largely technical because the hearing on the appellees' motion for the entry of a default judgment afforded the appellants the same opportunity to present mitigating circumstances that they would have had if a default had been entered and they had then moved under Rule 55(c) to set it aside.”  *Meehan*, 652 F.2d at 276.  However, the Court explained that “[e]ntering a default pursuant to Rule 55(a) and

---

[7]*But see Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW (MEJ), 2006 WL 2527776, *3 (N. D. Ca. Aug. 30, 2006) (slip copy) (entries of default “judgments are appropriate where the defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered.”).

affording a defendant an opportunity to move to vacate it pursuant to Rule 55(c) is the preferable course because it avoids the need to prepare for and pursue a damage hearing in those instances where the Rule 55(c) motion is granted." *Meehan*, 652 F.2d at 276 n.5.

On appeal from entry of default judgment, "[t]he case law on a motion to set aside an entry of default under Fed.R.Civ.P. 55(c) does shed some light on the factors that a trial court ought to consider in deciding whether to grant a motion for entry of default and to enter a default judgment:

> A trial court's determination of whether to set aside an entry of default is inherently similar to the court's initial determination whether to grant an entry of default and to enter a default judgment in the first place. After all, the fundamental, underlying question is the same: do the circumstances justify resolution of the case on the basis of one party's failure to plead or defend, rather than on the merits of the case? As a result, logic dictates that the same factors that should be considered when making a determination under the "good cause" standard of Rule 55(c) similarly should be considered when ruling on a party's initial motion for entry of default and when deciding whether to enter a default judgment.

*Schiff v. State of R.I.*, 199 B.R. 438, 441 (D.R.I.. 1996).  *See also* 10A FPP § 2692 ("[W]hen deciding a motion for the entry of a default judgment, the court also often will consider whether sufficient grounds have been disclosed to justify vacating the default judgment upon a subsequent application under Rule 55(c)."); *In Re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 398, 416 n.21 (E. D. Pa. 1981).

"When a defendant seeks relief from an entry of default, three equitable factors are considered to determine if 'good cause' has been shown under the Rule 55(c) component of the analysis:  (1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced.'"  *Burrell v. Henderson*, 434 F.3d 826, 831 -832 (6th Cir. 2006) (citing *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992)).  *See also Weiss v. St. Paul Fire and Marine Ins. Co.*, 283 F.3d 790, 794

(6th Cir. 2002) ("the same factors that control a motion to vacate an entry of default under Rule 55(c) are also applicable in determining whether to vacate a default judgment: (1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default.") (citing *United Coin Meter Co., Inc. v. Seaboard Coastline R. R.*, 705 F.2d 839, 845 (6th Cir. 1983)).

Another court has stated that, with respect to vacating a default judgment, "[w]hen determining whether a defaulting party has shown good cause sufficient to justify setting aside an entry of default, the Court considers three main factors: 1) whether the defaulting party defaulted wilfully, 2) whether setting aside the clerk's entry of default would prejudice the defaulting party's adversary, and 3) whether the defaulting party has presented a meritorious defense." *Bryan v. Butler*, 163 F.R.D. 175, 176 -177 (N.D.N.Y. 1995) (citing cases). *See also Heber v. U.S.*, 145 F.R.D. 576, 578 (D.Utah 1992) (on review of plaintiff's motion to strike defendant's answer and to dismiss which was treated by the court as a motion for entry of default judgment, the court considered "(1) whether the default [by Riverside] was wilful; (2) whether defendant has a meritorious defense; and (3) whether any prejudice will result to the nondefaulting party [CCI] if relief is granted.").

"The Court may also consider other relevant equitable factors, such as whether the defaulting party failed to follow a procedural rule because of a mistake made in good faith and whether preserving the entry of default would produce a harsh or unfair result." *Bryan*, 163 F.R.D. at 177. *See also Hudson v. State of N.C.*, 158 F.R.D. 78, 80 (E.D.N.C.,1994) (*Carwile v. Ray*, 481 F.Supp. 33, 35 (E. D. Wa. 1979) (on review of plaintiff's motion for default judgment, "[f]actors to consider in this exercise [the entry of default] include whether the plaintiff will be prejudiced and, if so, the

extent thereof, and whether the entry of default judgment would result in injustice.").

**b.**      To begin, Epicentre denies any relationship with Riverside.  It is worth noting CCI's contention that, based upon Epicentre's counsel's representation of Riverside in *Banc One, NA, et al. v. Riverside Masonry, L.L.C., et al.*, Wayne County Circuit Case No. 02-241534-PD, and Epicentre's naming of Cence as an expert in the instant case, "it appears that counsel for Epicentre has had, and still has, a relationship with Riverside and its principal, and Riverside has had ample opportunity to have been made aware that CCI's Third-Party Complaint named Riverside in this lawsuit as Third-party Defendant."  Doc. Ent. 38 ¶ 23.  On the other hand, Epicentre "denies that it has any 'relationship' with Riverside, a separate legal entity apart from its principal Aurelio Cence[,]" and contends that Riverside's awareness is irrelevant as a result of the February 9, 2005 answer.  Doc. Ent. 40 ¶ 23.

**c.**      With respect to the aforementioned equitable considerations, it seems that Riverside's failure to appear and/or file an answer to the complaint was willful and not the result of a good faith mistake.  As Epicentre states in its response to the instant motion, "it became apparent to Plaintiff that Riverside would not be cooperating by filing its own Answer to the Third Party Complaint[.]"  Doc. Ent. 40 at 12.  10A Wright, Miller & Kane, Fed. Prac. and Proc. § 2685 (3d ed.) (citing *Estates of Ungar v. Palestinian Authority*, D.C.R.I.2004, 325 F.Supp.2d 15, 65 (D. R. I. 2004)) ("that defendants had received notice of the motion [for default judgment] was shown by their appearance at the hearing and the submission of filings, failure to answer [the amended complaint] was attributable to defendants rather than to their counsel, defendants had been given an abundance of time to answer [the amended complaint], and their failure to answer was willful.").

**d.**      Also, it does not appear that CCI bears culpability for Riverside's failure to appear.  CCI

contends that it was "forced to obtain alternate service upon Riverside[,]" Doc. Ent. 41 at 2, and it does not appear that Riverside's failure to appear is excused for a failure by CCI to comport with the requirements of Fed. R. Civ. P. 4(e), M. C. R. 2.105(I) or M. C. R. 2.106.  Fed. R. Civ. P. 4 governs summons.  With respect to the form of a summons, Rule 4 provides: "The summons shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff.  It shall also state the time within which the defendant must appear and defend, and notify the defendant that failure to do so will result in a judgment by default against the defendant for the relief demanded in the complaint.  The court may allow a summons to be amended."  Fed. R. Civ. P. 4(a).  With respect to "[s]ervice upon individuals within a judicial district of the United States[,]" Rule 4 provides that "[u]nless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States . . . pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State[.]" Fed. R. Civ. P. 4(e)(1).

M. C. R. 2.105 governs process and manner of service.  In pertinent part, it provides: "On a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard."  M. C. R. 2.105(I)(1). M. C. R. 2.106 governs "[n]otice by posting or publication".

In the January 18, 2005 ex-parte motion for alternate service upon Riverside, CCI claimed

that Riverside was out of business and "[i]ts registered address is vacant and its only known member resides outside of the United States." Doc. Ent. 13 at 8. On January 20, 2005, Judge Gadola entered an order granting CCI's motion for alternate service upon Riverside pursuant to Fed. R. Civ. P. 4(e)(1) and Michigan Court Rules 2.105(I) and 2.106. The order authorized service by publication of the order; required CCI to send a copy of the order to Riverside at its last known address; and required CCI to send a copy of the order as well as the third party complaint to Cence. Doc. Ent. 14. On January 31, 2005, Judge Gadola's order and the third-party complaint were served via first class mail upon Nino Cence and Judge Gadola's order was served via first class mail upon Riverside, doing business as C & R Masonry. (Doc. Entries 16 and 17). A February 18, 2005 affidavit of publication was served upon counsel of record via United States Mail on February 23, 2005. Doc. Ent. 38 Ex. E. CCI contends that, "[a]s a matter of law, service of process of CCI's Third-Party Complaint upon Riverside was completed February 18, 2005." Doc. Ent. 38 ¶ 17. Therefore, CCI contends, Riverside's answer was due on March 10, 2005. Doc. Ent. 38 ¶ 18.

CCI mentions Judge Gadola's January 20, 2005 order and states that it complied with the order, Fed. R. Civ. P. 4(e), Michigan Court Rules 2.105(I) and 2.106. Doc. Ent. 38 ¶¶ 11-16. Furthermore, CCI claims that "Riverside is neither a minor, incompetent, nor in the military service." Doc. Ent. 38 ¶ 26. Riverside itself, not having filed a pleading in this case, has not argued that CCI's alternate service did not comport with the relevant rules. Furthermore, in response to the instant motion, Epicentre "neither admits nor denies [these] allegations . . . and leaves CCI to its proofs." Doc. Ent. 40 ¶¶ 11-16, 26.

Consistent with my conclusion that Riverside's failure to appear was willful, and in light of the fact that CCI appears to have complied with the alternative service provisions set forth in Judge

22

Gadola's order, CCI's conduct does not appear to have contributed to Riverside's default.

**e.**     Furthermore, entry of default by the Clerk does not render "a harsh or unfair result." *Bryan*, 163 F.R.D. at 177.   In accordance with the procedure described in *Meehan*, 652 F.2d at 276, Riverside may file a Rule 55(c) motion to set aside the default.[8]

**f.**     The parties raise arguments about the meritoriousness of a defense by Riverside and the prejudice resulting from the relief CCI seeks.   CCI maintains that "Riverside has utterly failed to demonstrate any clear purpose to defend the Third-Party Complaint of CCI, and the entry of Default is appropriate."   Doc. Ent. 38 ¶ 25.   CCI argues that Riverside will not suffer prejudice as a result of the entry of default or default judgment against it.   Doc. Ent. 38 ¶¶ 27, 28.   Epicentre claims that Riverside need not file an answer, denies CCI's arguments that entry of default or default judgment will not be prejudicial, and responds that "[d]efendant is improperly attempting to seek a judgment against Riverside, without addressing the merits of the underlying claims, to avoid having to pay the amounts rightfully due Riverside and thus rightfully due Plaintiff as Riverside's secured creditor." Doc. Ent. 40 ¶¶ 25, 27, 28.

CCI claims that "Riverside has no meritorious defense, at all relevant times Riverside had ceased doing business, and opposing the third-party complaint would be futile." Doc. Ent. 46 at 2-4. In support of this argument, CCI states that "Cence also testified that Riverside ceased doing business in the Fall of 2002, and there was no one at Riverside to make the repairs required by Wal-Mart." Doc. Ent. 46 at 2.   Attached to CCI's supplemental brief is a December 3, 2002 letter from

---

[8]Epicentre states that if the Court "decides that the Answer filed by Plaintiff on behalf of Riverside was not proper, then Plaintiff would request that the Court provide an opportunity for a new Answer to be filed." Doc. Ent. 40 at 19.   This is a request that may be addressed by Riverside itself in a Rule 55(c) motion to set aside the default entered against it.

Frank V. Pampalone, AIA, CBO (Wal-Mart Project Director), to James W. Small, Vice President of CCI. Doc. Ent. 46 Ex. B. According to CCI, this letter communicated that "there were substantial defects in the masonry work of Riverside which jeopardized the structural integrity of the Project's walls[.]" Doc. Ent. 46 at 2. According to CCI, Riverside does not have any project records whatsoever. Doc. Ent. 46 at 4. In his February 8, 2006 deposition, Cence stated that, although Bank One probably had C & R Masonry's copies of the plans and specs and corporate documents in storage, he stated that Riverside does not have any records, nor did he have any Riverside records. Doc. Ent. 46 Ex. C at 26-27. Additionally, CCI provides printouts from the Michigan Department of Labor & Economic Growth which state that Riverside was "[a]ctive, but not in good standing as of 5-1-2003[.]" Doc. Ent. 46 Ex. A.

Both Epicentre and CCI mention the entry of a default as to Riverside. Epicentre states that if the Court concludes that the answer Epicentre filed is improper and enters default against Riverside, denies Epicentre's request for leave to file a new answer, and enters default against Riverside, then it asks the Court to "follow[] the logic of *Northland [Ins. Co. v. Cailu Title Corp.*, 204 F.R.D. 327 (W. D. Mich. 2000)], deny CCI's request for entry of a default judgment, [and] treat this action and the issues involved as a single unit and allow these matters to be decided upon the merits." Doc. Ent. 40 at 19.[9] CCI states that "[a]t the very least, Riverside should be found in default pursuant to [Rule] 55(a) based on Epicentre's admission that Riverside has failed to appear.

---

[9]CCI criticizes Epicentre's reliance upon *Northland*. Doc. Ent. 41 at 5. CCI notes that *Northland* sought declaratory relief and "Epicentre and Riverside are not co-defendants, and Epicentre is not jointly liable for the actions of Riverside, as was the co-defendant in *Northland*." CCI claims that its cause of action against Riverside "is based upon Riverside's breach of the Subcontract Agreement while Epicentre seeks to collect upon Riverside's Collateral." Doc. Ent. 41 at 5.

With respect to entry of **judgment** against Riverside, Epicentre cannot pick and choose when and where it wants responsibility for the actions of Riverside."  Doc. Ent. 41 at 3.

Despite my foregoing conclusion that Riverside's default appears to be willful, a factor favoring the denial of a Rule 55(c) motion by Riverside to set aside a default entered against it, I limit my ruling to directing the Clerk of the Court to enter default against Riverside pursuant to Rule 55(a).  First, this opinion does not address (1) the meritoriousness of any defense Riverside itself asserts to CCI's third-party complaint or (2) any prejudice resulting to CCI, both factors for determining good cause under Rule 55(c).  Second, although "[a]s a practical matter, [the Court] need consider only whether a default judgment is appropriate in this case: if it is, then it follows that the lesser standard of Rule 55(a) is satisfied; if not, then entry of a default by the Clerk would be a waste of effort[,]" *Systems Industries, Inc. v. Han*, 105 F.R.D. 72, 74 (E. D. Pa. 1985), I conclude that following the procedure described in *Meehan* is the best course of action at this time.[10]

### 4.    Epicentre, a secured creditor and a real party in interest, may not defend CCI's third-party complaint (i.e., file an answer) on behalf of Riverside, a named party.

**a.**    To begin, CCI argues that "Riverside has failed and refused to answer, appear or otherwise defend the Third-Party Complaint."  Doc. Ent. 38 ¶ 19, ¶ 24.  In response, plaintiff stated: "An Answer was filed to the Third Party Complaint against Riverside.  Plaintiff, pursuant to the assignment of Bank One's security interest and as assignee of Bank One's equitable and contractual subrogation rights under a security agreement entered into between Bank One and Riverside Masonry, LLC filed an Answer on behalf of Third Party Defendant Riverside Masonry, LLC to

---

[10]Incidentally, "the dissolution of a firm need not abate suits by or against it, . . . since 'the dissolved corporation might have a successor that could be substituted for it and the suit continue.'" *Old Ben Coal Company*, __ F.3d __, 2007 WL 184636, *1 (7th Cir. Jan. 25, 2007) (citations omitted).

protect Plaintiff's claim and security interest." Doc. Ent. 40 ¶ 19. Epicentre "submits that it is not necessary for Riverside to file an Answer to the Third Party Complaint as Plaintiff has done so as its secured creditor and pursuant to the Agreements entered into with Riverside and Bank One, which said rights under those agreements now belong to Plaintiff." Doc. Ent. 40 ¶ 24. According to Epicentre, "Defendant is improperly attempting to seek a judgment against Riverside, without addressing the merits of the underlying claims, to avoid having to pay the amounts rightfully due Riverside and thus rightfully due Plaintiff as Riverside's secured creditor." Doc. Ent. 40 ¶ 24.

CCI maintains that the February 9, 2005 filing was improper, apparently because Epicentre did not obtain an assignment from Riverside. Doc. Ent. 38 ¶ 20, at 10-11.[11] Epicentre responds that "it has the same rights that the Bank would have to prosecute or defend claims on behalf of Riverside and thus, it was proper for the Plaintiff to file an Answer to the Third Party Complaint filed by CCI." Doc. Ent. 40 ¶ 20.

**b.** Plaintiff's brief in opposition to the instant motion sets forth its arguments in detail. Epicentre argues that "it is necessary and advisable for the Plaintiff to defend the Third Party action filed against its debtor Riverside." Epicentre contends that the terms of the Security Agreement and Article 9 of the UCC expressly permit it to do so. Epicentre claims that "it must defend the action against Riverside filed by CCI" "[i]n order to enforce Plaintiff's security interest as to Riverside[.]" Doc. Ent. 40 at 11.

Epicentre claims it filed the answer to protect itself. Specifically, Epicentre states that "[w]hen it became apparent to Plaintiff that Riverside would not be cooperating by filing its own

---

[11]In response to CCI's discovery requests, plaintiff stated that it "did not obtain any assignment from C & R Masonry[,]" and "[p]laintiff did not receive an assignment from Riverside Masonry." Doc. Ent. 38 Ex. H (Doc. Req. #23 rsp. & Int. #1 rsp.).

Answer to the Third Party Complaint, to protect Plaintiff's security interest, as expressly permitted by the Security agreement and as contemplated by Article 9 of the UCC, Plaintiff took the necessary steps, i.e., filing an Answer on behalf of Riverside, to protect its claims and perfected security interest in the accounts at issue."  Plaintiff states that "[d]efendant hopes to sidestep the merits of the claims made to procure a windfall."  According to Epicentre, "[w]hether any amounts are due and owing to CCI from Riverside, resulting in an offset of the amounts due to Plaintiff, is an issue for the jury to decide."  Doc. Ent. 40 at 12.  Epicentre suggests that CCI is attempting "to obtain a default judgment against Riverside and argue collateral estoppel/res judicata in the case as to Plaintiff's claims and thus, eliminate its financial obligations to Riverside's secured creditor, Epicentre."  In light of the fact that Riverside is not a going concern, Epicentre filed the February 9, 2005 answer "in order to protect its interests and as it is permitted to do so by 'any judicial procedure' pursuant to the UCC and by the express language of the Agreement between Bank One and Riverside[.]" Doc. Ent. 40 at 13.

Furthermore, Epicentre contends that the March 9, 2004 "assignment of debt and security interest" permits Epicentre to file an answer to the Third Party Company on Riverside's behalf. Specifically, Epicentre states that "[a]ll of [Riverside's] property, including its business records, computers and equipment were taken to a storage location and auctioned pursuant to its Agreement with Bank One.  As such, the Plaintiff filed an Answer to the Third Party Complaint on behalf of Riverside, which it is expressly entitled to do pursuant to the security agreements entered into between Bank One and Riverside, (Exhibit C pg. 3) and the UCC."  Doc. Ent. 40 at 15.  Epicentre argues that "[t]he Security Agreements and the UCC permit [Epicentre] to take whatever steps necessary to enforce their security agreements.  This would obviously contemplate defending an

27

action that attempts to eliminate the collateral entirely." Doc. Ent. 40 at 17. Epicentre claims that "[t]he exact issues that are raised in the Third Party Complaint filed by the Defendant are identical to the Affirmative Defenses plead by CCI to the Complaint filed by the Plaintiff and in fact, are the exact same allegations plead by CCI in this counter complaint against Plaintiff." Doc. Ent. 40 at 17. Epicentre argues that "the issues of whether Riverside is owed or owes money to CCI are directly at issue in the matter between Plaintiff and CCI. Plaintiff is entitled to have those issues decided upon the merits. If CCI is to obtain a default judgment against Riverside, they will have essentially eliminated the claims filed by Plaintiff without having the issues decided upon the merits." Epicentre also contends that "CCI's claim is not for a 'sum certain' and proofs of any damages they claim to have sustained would have to be adjudicated under any circumstance[.]" Doc. Ent. 40 at 19.

**c.** In reply, CCI argues that "Epicentre has no right to defend CCI's claim against Riverside[,]" because "the fact that Epicentre may be a secured creditor of Riverside's Collateral ***has no relationship to CCI's affirmative claims against Riverside for Riverside's failure to properly construct masonry.***" Doc. Ent. 41 at 2. CCI argues that "[i]f Epicentre intended to answer as 'attorney in fact' for Riverside, it should have plead that status and attached the documents it believes confer that right - but, it did not[.]" According to CCI, "the Security Agreement involving Riverside expressly limits the secured creditor's attorney in fact status to issues involving the Collateral only." Doc. Ent. 41 at 3. CCI also argues that "Epicentre's 'right' to act as Riverside's attorney in fact to protect the Collateral does not arise, if at all, until it can prove CCI is indebted to Riverside, which it cannot." Doc. Ent. 41 at 4. Also, CCI argues that "Epicentre's rights are not affected by Riverside's default." Doc. Ent. 41 at 4-5. In support of this argument, CCI states that "Epicentre cannot be empowered to defend CCI's claim against Riverside without also assuming

28

Riverside's accompanying liability." Doc. Ent. 41 at 4.

**d.**     Epicentre claims that "[i]n filing their Motion, the Defendants completely ignore the plain language of the Security Agreement entered into between Riverside and Bank One, the rights under which inure to the Plaintifff here as Bank One's assignee." Doc. Ent. 40 at 11. The November 27, 2001 Continuing Security Agreement between Riverside and Bank One states that the Collateral consists of accounts receivable, inventory, equipment and instruments. Doc. Ent. 40-4 at 1. With respect to accounts receivable, the agreement provides in part:

> It is agreed that, at any time the Bank elects, it shall be entitled, in its own name or in the name of the Debtor or otherwise, but at the expense and cost of the Debtor, to collect, demand, receive, sue for or compromise any and all Accounts Receivable, and to give good and sufficient releases, to endorse any checks, drafts or other orders for the payment of money payable to the Debtor in payment and, in its discretion, to file any claims or take any action or proceedings which the Bank may deem necessary or advisable.

Doc. Ent. 40-4 at 3. Furthermore, it provides that: "The Debtor appoints the Bank or the Bank's designee as the Debtor's attorney-in-fact to do all things with reference to the Collateral as provided for in this section [the accounts receivable section] including without limitations . . . (4) to do all things necessary to carry out this agreement." Doc. Ent. 40-4 at 1, 3.

However, the above-quoted language in the security agreement allows Epicentre to bring a claim to recover on the amounts owing, which it has by filing the instant lawsuit.

**e.**     Epicentre's status as a plaintiff, alone, does not give them a right to file an answer on Riverside's behalf. "The joinder of a third party defendant in and of itself does not assert a claim as between the plaintiff and the third party defendant, but is the assertion of a right by the original defendant against some one not a party to the action. Therefore the disposition of the third party complaint only affects the rights as between the original defendant and the third party defendant."

29

*Frankel v. Back*, 37 F.R.D. 545, 547 (E. D. Pa. 1965) (citing *Davies v. Dotson*, 198 F.Supp. 612 (E.D.Pa.1961)).

Epicentre claims that "[i]t would be absurd to suggest that the Plaintiff could not file an Answer on behalf of Riverside to the Third Party Complaint when a review of the express language of the Security Agreements is undertaken.  If secured parties were not allowed to take the steps that Plaintiff has in this case, particularly under the circumstances where a Third Party Defendant is defunct and unable to defend itself in the action brought against it, the banking industry would be turned upside down.  This is precisely why this language is included in the Security Agreements.  If the Defendant to an action by a secured creditor could simply file a Third Party Complaint against a defunct entity and obtain a default judgment in order to eliminate a security interest in Collateral, without the secured party being allowed to defend that action itself, it would undermine the entire purpose behind Article 9 of the UCC which permits security interests and the liberal enforcement of those interests."  Doc. Ent. 40 at 17 n.1.

Epicentre notes that "When a debtor [in this case Riverside] is in default under a security agreement, a secured party [in this case Epicentre] has the rights and remedies provided for in that agreement and he 'may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure'."  *Gorham v. Denha*, 77 Mich. App. 264, 269, 258 N.W.2d 196, 199 (1977) (quoting M.C.L.A. s 440.9501(1); M.S.A. s 19.9501(1)).  Doc. Ent. 40 at 11.  This is true with respect to any claim Epicentre may have against Riverside.  However, the November 27, 2001 Continuing Security Agreement at issue is between debtor Riverside and Bank One.  Doc. Ent. 40-4.  The March 9, 2004 assignment of debt and security interest assigned to Epicentre the amount owed to Bank One under the November 27, 2001 lien of credit agreement.

30

Doc. Ent. 40-3.

CCI's breach of contract claim, if successful, results in a judgment. That judgment, in and of itself, does not, eliminate the account receivable regarding which Epicentre is a secured creditor. As between CCI and Riverside, CCI might be able to use that judgment as an offset, but that does not diminish the collateral - here the account receivable - itself. The collateral is the account receivable, it is not an amount of money sitting in an account. That does not mean that Epicentre can represent Riverside in a separate claim against Riverside. Epicentre has an interest in an account receivable - a right to get money. But they don't have a security interest in cash already.

CCI may argue that Epicentre is standing in the shoes of Riverside and, therefore, any breach by Riverside sets up a recoupment defense against Epicentre's action to collect against CCI. This is a claim, however, that Epicentre can defend in its own name in the principal action between Epicentre and CCI.

**f.**     Fed. R. Civ. P. 14 governs third-party practice. In pertinent part, it provides that, "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). It further provides:

> The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make any defenses to the third-party plaintiff's claim as provided in Rule 12 and any counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

Fed. R. Civ. P. 14(a).

Pursuant to Rule 14, "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." Fed. R. Civ. P. 14(a). No such motion has been filed by Epicentre.

**g.**    Nor has Epicentre filed a motion to intervene. Fed. R. Civ. P. 24(a) provides in part: "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

## II.    ORDER

In accordance with the foregoing opinion, Cleveland Construction, Inc.'s motion for entry of default and default judgment against third-party defendant Riverside Masonry, L.L.C. is GRANTED IN PART and DENIED IN PART. The Clerk of the Court is directed to enter default as to defendant Riverside Masonry, L.L.C. pursuant to Fed. R. Civ. P. 55(a).

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten (10) days from the date of service of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

                              s/Paul J. Komives
Dated:3/7/07                  PAUL J. KOMIVES
                              UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 7, 2007.

s/Eddrey Butts
Case Manager